The plaintiff, Oxford Tire Supply, Inc., (Oxford), in these consolidated cases appeals the denial by the defendant, the commissioner of the department of revenue services (commissioner), of Oxford's protests and petitions for reassessments of sales and use taxes, interest and penalties. The taxes at issue relate to Oxford's service of collecting scrap tires. A taxpayer's appeal from such decisions is authorized pursuant to General Statutes § 12-422. The Superior Court has full equitable powers in such appeals and provides a trial de novo.Gallacher v. Commissioner of Revenue Services, 221 Conn. 166, 176,602 A.2d 996 (1992); Kimberly Clark Corp. v. Dubno, 204 Conn. 137, 144,527 A.2d 679 (1987).
The dispositive issue in these consolidated cases is whether the service of collecting scrap tires falls within the exemption from the sales and use tax of General Statutes § 12-407 (2) (i) (I) for "services rendered in the . . . removal of hazardous waste as defined in [General Statutes §] 22a-115, or other contaminants of air, water and soil. . . ." If such service falls within this exception, then the commissioner has improperly assessed all taxes at issue. The inquiry thus becomes whether the scrap tires removed by Oxford constitute "hazardous waste" or "other contaminants of air, water or soil." The court finds that scrap tires are "hazardous waste" and rules for the plaintiff.
The plaintiff is a service company that annually collects millions of tires, which are delivered to a tire burning facility.[1] The sources of tires (commercial gas stations, *Page 510 
tire stores, etc.) pay Oxford a fee for removing and disposing of the tires. The department of environmental protection of the state of Connecticut (department) classifies tires as "special waste" which requires special handling, storage, disposal and processing. Regs., Conn. State Agencies § 22a-209-8.
Oxford argues that scrap tires are hazardous waste as defined in §22a-115 (1)[2] or other contaminant of air, water or soil. The commissioner claims that scrap tires are not hazardous waste but rather special waste pursuant to Section 22a-209-1[3] of the Regulations of Connecticut State Agencies.
The evidence at trial consisted of a stipulation of facts, substantial documentary evidence and testimony. The plaintiff at trial was obligated to overcome the presumption of General Statutes § 12-410 (1) that all gross receipts are subject to sales tax, and the high burden *Page 511 
on taxpayers claiming exemption. See Plastic Tooling Aids Laboratory,Inc. v. Commissioner, 213 Conn. 365, 369, 567 A.2d 1218 (1990).
The plaintiff has met its burden of proving that scrap tire pickup services qualify for the § 12-407 (2) (i) (1) exemption as hazardous waste.
At trial, the plaintiff introduced the testimony of Mr. John Schaub, who established the nature of the scrap tire disposal problem and the role of Oxford in the elimination of such waste. The commissioner's witnesses did not dispute the problematic nature of scrap tires. Schaub testified to the fire hazard of scrap tires and their breakdown in the environment. He stated that "basically tires do leach several components and pretty much on a constant basis." Schaub's testimony further established that tires create problems with respect to fire potential. Tires burn and such fires are difficult to suppress. Tire fires release contaminants into the environment. Tires may combust spontaneously into fire in landfills. Tires are breeding sites for vectors such as mosquitoes, rodents and snakes.
The most critical evidence at trial was the testimony of Kirk Brown, Ph.D., and his incorporation of studies reflecting the hazardous nature of scrap tires. Brown is an expert in waste management. He is an agronomist with a special area of expertise in soil contamination. Brown testified that "[u]nder normal landfill conditions, under conditions where they're placed in stacks. . . . Under all those conditions, it's my opinion that they would leach hazardous substances." Included within such leachate would be: (1) volatile chemicals, including carbon disulfide, toluene and methyl ethyl ketone; (2) metals including zinc, arsenic, chromium, cadmium, barium, lead, selenium and mercury; and (3) polynuclear aromatic hydrocarbons, including known chemical carcinogens as well as other components. *Page 512 
The testimony of Schaub and Brown confirmed the obvious observation that the leaching would increase over time as a tire was left in the environment. The department's toxicity tests demonstrate that waste tires are generally not subject to leaking except for small quantities of barium. A department test of the water at the Hamden Tire Pond found grease, iron, turbidity and phenol. The department has ordered the Hamden Tire Pond closed and remedial action to be taken, including removal of all exposed tires.
A critical element of testimony by Brown concerned the composition of tires. He stated that the substances in tires leach because "[t]hey're not chemically bound. Particularly, the volatile substances are going to diffuse out just along concentration gradients. And the metals are not chemically bound. They're kind of residues left over as a result of the processing, and it's just a matter of the tires breaking down or releasing those." Thus, refuse tires that deteriorate under normal environmental conditions, are distinguishable from other products that may contain hazardous chemicals, which if encapsulated, are not readily released into the environment.
The Exeter tire burning plant discharges in its water runoff contaminants as evidenced by the department's "fleas and minnows" test. The ash resulting from the burning of tires is classified as hazardous waste.
Brown, though not a chemist, is an expert in waste management. His opinions were supported by numerous studies. The scientific evidence provided by Brown meets the standard for admission of scientific evidence established in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579,113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and adopted for Connecticut courts in State v. Porter, 241 Conn. 57, 68, 698 A.2d 739 (1997), cert. denied, 523 U.S. 1058, 118 S.Ct. 1384, 140 L.Ed.2d 645 (1998). *Page 513 
The hazardous waste definition of § 22a-115 (1) adopts the federal definition of hazardous waste contained in 40 C.F.R. § 261.2 (a) (2). The characteristics identified in federal regulations 40 C.F.R. § 262-21 through 262-24 are ignitability, corrosivity, reactivity or toxicity.
The combustion risk of tires (including the risk of spontaneous combustion) clearly satisfies the ignitability criteria as it "is capable, under standard temperature and pressure, of causing fire through friction, absorption of moisture or spontaneous chemical changes and, when ignited, burns so vigorously and persistently that it creates a hazard." 40 C.F.R. § 261.21 (a) (2). The major component of tires is petroleum, which is highly flammable and creates noxious, hard to extinguish, conflagrations. The federal standard of hazardous waste is satisfied if a solid waste exhibits any of the four identified characteristics. 40 C.F.R. § 262.20 (a).
The essence of the definition of hazardous waste is waste material "which may pose a present or potential hazard to human health or the environment when improperly disposed of, treated, stored, transported or otherwise managed. . . ." General Statutes § 22a-115 (1).
Waste tires represent threats to the groundwater, air and soil. The evidence at trial indicated that in addition to the leaching into the soil and ground water, tire components may vaporize into the air.
Garages, tire shops, etc., are mandated to dispose of tires by paying Oxford to remove and dispose of them in a regulated manner. Regs., Conn. State Agencies § 22a-209-8.
The department claims that the § 12-407 (2) (i) (I) exception is limited to specific hazardous waste site cleanup. The court, even reading the tax exemption *Page 514 
narrowly, is unable to add such language of limitation. The clear meaning of the statute is to cover services rendered in the removal of hazardous waste. "In matters of statutory interpretation, we are guided by well established principles, paramount among which is the principle that `[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relation ship to existing legislation and common law principles governing the same general subject matter. . . .' (Citations omitted; internal quotation marks omitted.)State v. Spears, 234 Conn. 78, 86-87, 662 A.2d 80, cert. denied,516 U.S. 1009, 116 S.Ct. 565, 133 L.Ed.2d 490 (1995)." Assn. ofNot-for-Profit Providers for the Aging v. Dept. of Social Services,244 Conn. 378, 391, 709 A.2d 1116 (1998).
 Based upon the persuasive evidence presented by the plaintiff that scrap tires are "hazardous waste,"