OXFORD TIRE SUPPLY, INC. *v.* COMMISSIONER
OF REVENUE SERVICES
(SC 16087)

Borden, Norcott, Palmer, Sullivan and Callahan, Js.*

* Although Justice Callahan reached the age of mandatory retirement before July 18, 2000, the date that this opinion is officially released, his continued participation on this panel is authorized by Public Acts 2000, No. 00-191, § 11.

Argued November 2, 1999—officially released July 18, 2000

*Jonathon L. Ensign,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellant (defendant).

*Douglas R. Steinmetz,* with whom were *Michael J. Hinton* and, on the brief, *Heather V. Taylor,* for the appellee (plaintiff).

*Richard Blumenthal,* attorney general, and *Kimberly P. Massicotte* and *Mark P. Kindall,* assistant attorneys general, filed a brief for the commissioner of environmental protection as amicus curiae.

*Richard Blumenthal,* attorney general, and *Mark F. Kohler,* assistant attorney general, filed a brief for the Connecticut siting council as amicus curiae.

*Opinion*

PALMER, J. This appeal requires us to decide whether the trial court properly concluded that scrap tire removal services are exempt from state sales and use

taxes. We conclude that those services are subject to sales and use taxes[1] and, therefore, we reverse the judgments of the trial court.

The relevant facts and procedural history are undisputed. At all times relevant to this appeal, the plaintiff, Oxford Tire Supply, Inc. (Oxford), was engaged in the business of removing used automobile tires from the premises of various commercial enterprises, including tire dealers and gas stations. Oxford removed the scrap tires for a fee and transported them to its facility in Plainfield, where they were sorted. Oxford thereafter delivered the tires to Exeter Energy (Exeter), a tire burning plant located in Sterling.[2] Oxford's smaller customers typically stored scrap tires on their business premises pending their removal. Oxford's larger customers generally warehoused their scrap tires in trailers that Oxford had provided to them. Oxford served numerous customers throughout Connecticut and removed millions of scrap tires annually.

During the two audit periods that are the subject of this appeal, January 1, 1989, through December 31, 1991, and January 1, 1992, through December 31, 1994, Oxford did not charge or collect sales taxes from its customers for its tire removal services. In November, 1993, the defendant, the commissioner of revenue services (commissioner), assessed sales taxes against Oxford pursuant to General Statutes (Rev. to 1993) § 12-415,[3] for the

---

[1] Because the primary issue in this case deals with the applicability of the sales tax to scrap tire removal services, we hereinafter refer only to that tax and not to the use tax. We note, however, that our holding applies to both the sales and use taxes.

[2] CMS Energy, a Michigan utility corporation, owns 100 percent of Oxford and 50 percent of Exeter. Exeter sells the energy generated from burning tires to utility companies. Approximately 95 percent of the tires collected by Oxford were delivered to Exeter. Oxford sold the remaining tires for reuse.

[3] General Statutes (Rev. to 1993) § 12-415 provides in relevant part: "(1) Deficiency assessments. If the commissioner is not satisfied with the return

scrap tire removal services that Oxford had rendered during the audit periods. Thereafter, Oxford petitioned the commissioner for reassessment under General Statutes § 12-418,[4] claiming that its tire removal services were not subject to sales tax based on General Statutes § 12-407 (2) (i) (I),[5] which exempts from such taxation services that are rendered in the "voluntary . . . removal of hazardous waste, as defined in [General

---

or returns of the tax or the amount of tax required to be paid to the state by any person, he may compute and assess the amount required to be paid upon the basis of the facts contained in the return or returns or upon the basis of any information within his possession or that may come into his possession. One or more deficiency assessments may be made of the amount due for one or for more than one period. . . ."

[4] General Statutes § 12-418 provides in relevant part: "(1) Petition for reassessment. Any person against whom an assessment is made under section 12-415 or 12-416 or any person directly interested may petition for a reassessment within sixty days after service upon such person of notice thereof. If a petition for reassessment is not filed within the sixty-day period, the assessment becomes final at the expiration of the period.

"(2) Oral hearing. If a petition for reassessment is filed within the sixty-day period, the commissioner shall reconsider the assessment and, if the person has so requested in his petition, shall, in his discretion, grant the person an oral hearing and shall give him ten days' notice of the time and place of the hearing. The commissioner may continue the hearing from time to time, as may be necessary, and may assign the conduct of such hearing to his representative.

"(3) Decrease or increase of assessment. The commissioner may decrease or increase the amount of the assessment before it becomes final, but the amount may be increased only if a claim for the increase is asserted by the commissioner at or before the hearing. . . ."

[5] General Statutes § 12-407 (2), which defines the terms "sale" and "selling" for purposes of Connecticut's sales tax, also expressly excludes certain kinds of services from its purview, thereby exempting those services from the sales tax. General Statutes § 12-407 (2) provides in relevant part: " 'Sale' and 'selling' mean and include . . . (i) the rendering of certain services for a consideration, exclusive of such services rendered by an employee for his employer, as follows . . . (I) services to industrial, commercial or income-producing real property, including but not limited to, such services as management, electrical, plumbing, painting and carpentry and *excluding any such services rendered in the voluntary evaluation, prevention, treatment, containment or removal of hazardous waste, as defined in section 22a-115, or other contaminants of air, water or soil* . . . ." (Emphasis added.)

Statutes §] 22a-115,[6] or other contaminants of air, water or soil . . . ." The commissioner denied Oxford's petitions, and Oxford appealed[7] to the Superior Court from the denial of the petitions pursuant to General Statutes (Rev. to 1995) § 12-422, as amended by Public Acts 1995, Nos. 95-26, § 18, and 95-220, § 4.[8]

---

[6] General Statutes § 22a-115 provides in relevant part: "(1) 'Hazardous waste' means any waste material, except by-product material, source material or special nuclear material, as defined in section 22a-151, which may pose a present or potential hazard to human health or the environment when improperly disposed of, treated, stored, transported, or otherwise managed, including (A) hazardous waste identified in accordance with Section 3001 of the federal Resource Conservation and Recovery Act of 1976 (42 [U.S.C. §] 6901 et seq.), (B) hazardous waste identified by regulation by the Department of Environmental Protection and (C) polychlorinated biphenyls in concentrations greater than fifty parts per million . . . ."

As we will discuss later in this opinion, the legislature amended section 22a-115 (1) in 1999; see Public Acts 1999, No. 99-225, § 30; to clarify the definition of hazardous waste. See part II of this opinion.

[7] During the pendency of its tax appeals, Oxford remitted—under protest—$321,649.85 to the commissioner. This amount represents the total amount that the commissioner had determined Oxford owed in taxes, interest and penalties.

[8] General Statutes (Rev. to 1995) § 12-422, as amended by Public Acts 1995, Nos. 95-26, § 18, and 95-220, § 4, provides in relevant part: "Any taxpayer aggrieved because of any order, decision, determination or disallowance of the commissioner of revenue services under section 12-418, 12-421 or 12-425 may, within one month after service upon the taxpayer of notice of such order, decision, determination or disallowance, take an appeal therefrom to the superior court for the judicial district of Hartford-New Britain . . . which shall be accompanied by a citation to the commissioner of revenue services to appear before said court. Such citation shall be signed by the same authority, and such appeal shall be returnable at the same time and served and returned in the same manner, as is required in case of a summons in a civil action. The authority issuing the citation shall take from the appellant a bond or recognizance to the state of Connecticut, with surety to prosecute the appeal to effect and to comply with the orders and decrees of the court in the premises. Such appeals shall be preferred cases, to be heard, unless cause appears to the contrary, at the first session, by the court or by a committee appointed by it. Said court may grant such relief as may be equitable and, if such tax has been paid prior to the granting of such relief, may order the treasurer to pay the amount of such relief, with interest at the rate of two-thirds of one per cent per month or fraction thereof, to the aggrieved taxpayer. If the appeal has been taken without probable cause, the court may tax double or triple costs, as the case demands; and, upon

After a trial,[9] the court found that scrap tires, when exposed to the environment over time, leach certain contaminants.[10] On the basis of this and related findings,[11] the court sustained the plaintiff's appeals[12] and rendered judgments in favor of Oxford, concluding that the removal of scrap tires is exempt from sales tax because scrap tires constitute hazardous waste under § 12-407 (2) (i) (I). *Oxford Tire Supply, Inc.* v. *Commissioner of Revenue Services*, 45 Conn. Sup. 508, 511, 514, 725 A.2d 1009 (1998). The trial court also noted that, even if it had found that scrap tires were not hazardous waste within the meaning of § 12-407 (2) (i) (I), the removal thereof still would be exempt from sales tax because scrap tires "would certainly constitute 'other contaminants of air, water [or] soil' . . . ." Id., 514 n.4, quoting General Statutes § 12-407 (2) (i) (I).

The commissioner appealed from the judgments of the trial court to the Appellate Court, and we transferred

all such appeals which are denied, costs may be taxed against the appellant at the discretion of the court, but no costs shall be taxed against the state."

[9] An appeal under General Statutes § 12-422 challenging a sales tax assessment is subject to a trial de novo in the Superior Court. *Jones* v. *Crystal*, 242 Conn. 599, 601, 699 A.2d 961 (1997); *Gallacher* v. *Commissioner of Revenue Services*, 221 Conn. 166, 176, 602 A.2d 996 (1992).

[10] Kirk W. Brown, an expert in waste management who specializes in the study of soil contamination, testified on behalf of Oxford that scrap tires leach hazardous substances when exposed to the environment. *Oxford Tire Supply, Inc.* v. *Commissioner of Revenue Services*, 45 Conn. Sup. 508, 511, 725 A.2d 1009 (1998). According to Brown, he had observed tires leach the following substances: "(1) volatile chemicals, including carbon disulfide, toluene and methyl ethyl ketone; (2) metals including zinc, arsenic, chromium, cadmium, barium, lead, selenium and mercury; and (3) polynuclear aromatic hydrocarbons, including known chemical carcinogens . . . ." Id. John Schaub, another witness who testified on behalf of Oxford, indicated that scrap tires: (1) release contaminants into the environment; (2) may combust spontaneously into fire in landfills; and (3) are breeding sites for mosquitoes, rodents and snakes. Id.

[11] The commissioner has not challenged the trial court's factual findings.

[12] This case involves two separate tax appeals, one for each audit period. The trial court consolidated the two appeals. See *Oxford Tire Supply, Inc.* v. *Commissioner of Revenue Services*, 45 Conn. Sup. 508, 509, 725 A.2d 1009 (1998).

the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. On appeal, the commissioner claims that the scrap tire removal services rendered by Oxford are not exempt from sales tax under § 12-407 (2) (i) (I).

During the pendency of this appeal, the legislature amended the definition of hazardous waste found in § 22a-115 (1); see footnote 6 of this opinion; by expressly excluding scrap tires from the purview of that definition.[13] Public Acts 1999, No. 99-225, § 30 (P.A. 99-225). Consequently, we, sua sponte, ordered the parties to file supplemental briefs on the following two issues: "(1) Is [P.A. 99-225, § 30] retroactive . . . [and] (2) [i]f the answer to [the first] question . . . is yes, what effect, if any, does that retroactivity have on the question of whether scrap tires are (a) hazardous waste, or (b) contaminants of air, water [or] soil, within the meaning of . . . § 12-407 (2) (i) (I)?"

We conclude that: (1) P.A. 99-225, § 30, is retroactive and, consequently, scrap tires do not constitute hazardous waste for purposes of § 12-407 (2) (i) (I); and (2) scrap tires are not "contaminants of air, water or soil" within the meaning of § 12-407 (2) (i) (I). We, therefore, agree with the commissioner that the trial court improperly determined that Oxford is entitled to a sales tax exemption for its scrap tire removal services rendered during the six year period from January 1, 1989, through December 31, 1994.

---

[13] General Statutes § 22a-115 (1), as amended by Public Acts 1999, No. 99-225, § 30, provides: " 'Hazardous waste' means any waste material which may pose a present or potential hazard to human health or the environment when improperly disposed of, treated, stored, transported, or otherwise managed, including (A) hazardous waste identified in accordance with Section 3001 of the federal Resource Conservation and Recovery Act of 1976 (42 [U.S.C. §] 6901 et seq.), (B) hazardous waste identified by regulation by the Department of Environmental Protection, and (C) polychlorinated biphenyls in concentrations greater than fifty parts per million, *but does not mean* by-product material, source material or special nuclear material, as defined in section 22a-151, or *scrap tires*." (Emphasis added.)

## I

Before considering the commissioner's claims, we note that our resolution of the issues raised by this appeal is governed by several well established principles. First, the determination of whether Oxford's tire removal services qualify for a sales tax exemption pursuant to § 12-407 (2) (i) (I) is a question of statutory interpretation over which our review is plenary. See, e.g., *Coelho* v. *ITT Hartford*, 251 Conn. 106, 110, 752 A.2d 1063 (1999). Second, "[i]n construing any statute, [including taxing statutes] we seek to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Sharper Image Corp.* v. *Miller*, 240 Conn. 531, 536, 692 A.2d 774 (1997). Finally, "[t]o ascertain the intention of the legislature with respect to a tax exemption, we employ three overlapping presumptions. First, statutes that provide exemptions from taxation are a matter of legislative grace that must be strictly construed against the taxpayer. Second, any ambiguity in the statutory formulation of an exemption must be resolved against the taxpayer. Third, the taxpayer must bear the burden of proving the error in an adverse assessment concerning an exemption. *Plastic Tooling Aids Laboratory, Inc.* v. *Commissioner of Revenue Services*, 213 Conn. 365, 369, 567 A.2d 1218 (1990); *United Illuminating Co.* v. *Groppo*, 220 Conn. 749, 752–53, 601 A.2d 1005 (1992); *United Church of Christ* v. *West Hartford*, 206 Conn. 711, 718–19, 539 A.2d 573 (1988)." (Internal quotation marks omitted.) *Common Fund* v. *Fairfield*, 228 Conn. 375, 380–81, 636

A.2d 795 (1994). Guided by these principles, we turn to the issues raised by this appeal.

## II

We first address the commissioner's contention that the trial court improperly determined that Oxford's tire removal services constituted services rendered in the "voluntary . . . removal of hazardous waste" pursuant to § 12-407 (2) (i) (I). We are persuaded that P.A. 99-225, § 30, retrospectively excluded scrap tires from the applicable definition of hazardous waste and that Oxford thus cannot avail itself of the sales tax exemption for services rendered in the voluntary removal of hazardous waste.

As we previously have indicated, the exemption for services rendered in the removal of hazardous waste incorporates the definition of such waste under § 22a-115 (1). From the date that this action was commenced until approximately six months after the trial court had rendered judgments, § 22a-115 (1) contained no express reference to scrap tires. See footnote 6 of this opinion. Public Act 99-225, § 30, however, amended § 22a-115 (1) by explicitly excluding scrap tires from the definition of hazardous waste. See footnote 13 of this opinion. Thus, if P.A. 99-225, § 30, has retrospective applicability, then the scrap tire removal services rendered by Oxford do not fall within the statutory sales tax exemption for the voluntary removal of hazardous waste.

"Whether to apply [P.A. 99-225, § 30] retroactively or prospectively depends upon the intent of the legislature in enacting the statute. . . . In order to determine the legislative intent, we utilize well established rules of statutory construction. Our point of departure is General Statutes § 55-3, which states: No provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have

retrospective effect. The obligations referred to in the statute are those of substantive law. . . . Thus, we have uniformly interpreted § 55-3 as a rule of *presumed* legislative intent that statutes affecting *substantive* rights shall apply prospectively only. . . . This presumption in favor of prospective applicability, however, may be rebutted when the legislature clearly and unequivocally expresses its intent that the legislation shall apply retrospectively. . . . Where an amendment is intended to clarify the original intent of an earlier statute, it necessarily has retroactive effect. . . . We generally look to the statutory language and the pertinent legislative history to ascertain whether the legislature intended that the amendment be given retrospective effect." (Emphasis in original; internal quotation marks omitted.) *In re Eden F.*, 250 Conn. 674, 695–96, 741 A.2d 873 (1999).

The language of P.A. 99-225, § 30, provides no indication whether the legislature intended that it be applied prospectively only or retrospectively as well. The pertinent legislative history, however, contains compelling evidence that the legislature intended to clarify, rather than to change, the definition of hazardous waste under § 22a-115 (1). In particular, Representative Patricia Widlitz, who, along with another representative, introduced an amendment to a bill, which eventually became P.A. 99-225, § 30, explained that it "is a *technical* amendment *clarifying* the meaning of hazardous waste." (Emphasis added.) 42 H.R. Proc., Pt. 8, 1999 Sess., p. 2897. In the absence of anything in the scant legislative history of P.A. 99-225, § 30, to contradict Representative Widlitz' direct and unequivocal statement regarding the amendment's clarifying purpose, we afford substantial weight to her characterization of its objective and effect. See, e.g., *Connecticut National Bank* v. *Giacomi*, 242 Conn. 17, 40–41, 699 A.2d 101 (1997) (statements by legislators that amendment clarifies existing law signify legislative

intent regarding retroactivity of amendment); *Edelstein* v. *Dept. of Public Health & Addiction Services*, 240 Conn. 658, 668, 692 A.2d 803 (1997) (same); *State* v. *Magnano*, 204 Conn. 259, 281–82, 528 A.2d 760 (1987) (same).

Another "factor [that] we have deemed to be significant in determining the clarifying character of legislation is that the legislation was enacted in direct response to a judicial decision that the legislature deemed incorrect." *Dept. of Social Services* v. *Saunders*, 247 Conn. 686, 702, 724 A.2d 1093 (1999); see also *Toise* v. *Rowe*, 243 Conn. 623, 628–29, 707 A.2d 25 (1998) (reasonable to conclude that prompt legislative response to controversy regarding interpretation of original act evinces legislative intent to clarify meaning of that act); *Edelstein* v. *Dept. of Public Health & Addiction Services*, supra, 240 Conn. 669 (same); *State* v. *State Employees' Review Board*, 239 Conn. 638, 651, 687 A.2d 134 (1997) (same). As Oxford concedes, P.A. 99-225, § 30, was enacted directly in response to the holding of the trial court in this case that scrap tires constitute hazardous waste under § 22a-115 (1) and that, consequently, scrap tire removal services are exempt from sales tax under § 12-407 (2) (i) (I).[14] The legislature's prompt and unambiguous response to the trial court's decision provides persuasive support for the commissioner's contention that the legislature intended to clarify, rather than to change, the statutory definition of hazardous waste.

For the foregoing reasons, we conclude that the legislature intended P.A. 99-225, § 30, to be retroactive.

---

[14] As Oxford candidly has acknowledged, "[t]here is no doubt that the legislature passed the [amendment] in reaction to the trial court's decision [in this case] . . . ." Indeed, the analysis of the legislation contained in the official summary of the 1999 Public Acts expressly refers to the trial court's decision. See Office of Legislative Research, Connecticut General Assembly, Summary of 1999 Public Acts (1999) p. 91.

Because the amendment makes clear that scrap tires do not constitute hazardous waste for purposes of § 12-407 (2) (i) (I), we reject Oxford's claim, and the trial court's determination, to the contrary.[15]

## III

The commissioner also challenges the trial court's determination that Oxford is entitled to a sales tax exemption because its scrap tire removal services constitute services rendered in the voluntary removal of "other contaminants of air, water or soil" within the

[15] Oxford asserts that, because P.A. 99-225, § 30, became effective upon its passage, the legislature necessarily intended that P.A. 99-225, § 30, be given prospective effect only. Oxford, however, provides no support for this contention. As we previously have explained, although P.A. 99-225, § 30, contains no express language regarding its retrospective applicability, its legislative history convincingly demonstrates that the legislature intended to clarify the definition of hazardous waste.

Oxford also maintains that it had a vested right to a sales tax exemption for its scrap tire removal services under § 12-407 (2) (i) (I), and that the retrospective application of P.A. 99-225, § 30, violates that right. It is true that "[t]he retroactive nature of clarifying legislation has limits . . . and must not operate in a manner that would unjustly abrogate vested rights. . . . A vested right is one that equates to legal or equitable title to the present or future enjoyment of property, or to the present or future enforcement of a demand, or a legal exception from a demand made by another." (Internal quotation marks omitted.) *Toise* v. *Rowe*, supra, 243 Conn. 631. In support of its claim, Oxford relies on testimony adduced at trial that other businesses performing scrap tire removal services were not assessed a sales tax on those services. Even if this fact were true, this fact alone is not sufficient to establish that Oxford reasonably and justifiably relied to its detriment on an expectation that it would not be assessed sales tax on its services. See id. Indeed, the department of environmental protection (department) and the Connecticut siting council (council) never have treated scrap tires as hazardous waste. Specifically, Charles W. Atkins, a department engineer, testified at trial that, since at least 1975, the department has classified scrap tires as "special waste," and not hazardous waste; see Regs., Conn. State Agencies § 22a-209-1; and, in 1996, the department issued letters to Oxford and the commissioner in which it characterized scrap tires as "nonhazardous solid" waste. Moreover, the council never has required scrap tire disposal plants, including Exeter; see footnote 2 of this opinion and accompanying text; to obtain permits required for the operation of a hazardous waste disposal facility.

meaning of § 12-407 (2) (i) (I). See *Oxford Tire Supply, Inc.* v. *Commissioner of Revenue Services*, supra, 45 Conn. Sup. 514 n.4. Oxford asserts that its services fall within the statutory exemption for other contaminants of air, water or soil because scrap tires leach substances that contaminate the environment.[16] We agree with the commissioner that scrap tires do not constitute other contaminants of air, water or soil for purposes of § 12-407 (2) (i) (I).[17]

Our determination of whether scrap tires constitute other contaminants of air, soil or water within the mean-

[16] The sales tax exemption for services "rendered in the voluntary evaluation, prevention, treatment, containment or removal of . . . other contaminants of air, water or soil" was enacted in 1994; Public Acts, Spec. Sess., May, 1994, No. 94-4, § 13 (Spec. Sess. P.A. 94-4); but was made "applicable to income years commencing on or after July 1, 1989 . . . ." Id., § 85. Thus, even if Oxford were to prevail on its claim that its services fall within the sales tax exemption for services "rendered in the voluntary . . . removal of . . . other contaminants of air, water or soil," it cannot claim an exemption from sales tax for those services rendered between January 1, 1989, and June 30, 1989, which marks the beginning of the first audit period at issue in this case, simply because such a sales tax exemption did not exist during that period.

[17] Oxford also contends that the legislature implicitly approved the trial court's interpretation of the language, "other contaminants of air, water or soil," as including scrap tires because the legislature did not expressly exclude scrap tires from that category when it amended § 22a-115 (1) in P.A. 99-225, § 30, in which it expressly excluded scrap tires from the definition of hazardous waste. We are not persuaded by this argument. As the trial court indicated, its decision was "[b]ased upon the persuasive evidence presented by [Oxford] that scrap tires are hazardous waste." (Internal quotation marks omitted.) *Oxford Tire Supply, Inc.* v. *Commissioner of Revenue Services*, supra, 45 Conn. Sup. 514. It is true that the trial court also stated that, "even if [it] were to find that scrap tires were not considered hazardous waste, they would certainly constitute other contaminants of air, water [or] soil based upon the evidence presented at the trial as to their composition and propensity to break down." (Internal quotation marks omitted.) Id., 514 n.4. The court, however, rendered this alternative conclusion in a brief footnote at the end of its decision and, moreover, provided no other explanation or analysis in support of its determination. See generally id. In such circumstances, we are unwilling to conclude that the legislature's failure to address this issue in P.A. 99-225, § 30, signifies its tacit approval of the trial court's summary treatment of the issue.

ing of § 12-407 (2) (i) (I) also presents a question of statutory interpretation. "As with any issue of statutory interpretation, our initial guide is the language of the statute itself. . . . The words of a statute are to be given their commonly approved meaning unless a contrary intent is clearly expressed." (Citations omitted; internal quotation marks omitted.) *Peabody N.E., Inc.* v. *Dept. of Transportation*, 250 Conn. 105, 122, 735 A.2d 782 (1999); see also General Statutes § 1-1 (a).[18]

Because the word "contaminant" is not defined in § 12-407, "it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) *State* v. *Hodge*, 248 Conn. 207, 263, 726 A.2d 531, cert. denied, 528 U.S. 969, 120 S. Ct. 409, 145 L. Ed. 2d 319 (1999). Webster's Third New International Dictionary defines "contaminant" as "something that contaminates." That dictionary defines "contaminate" as "to soil, stain, corrupt, or infect by contact or association . . . [to] make inferior or impure by mixture . . . [or] to render unfit for use by the introduction of unwholesome or undesirable elements . . . ." Id. Although scrap tires leach substances that "contaminate" air, water or soil, it is the leachate, and not the scrap tire, itself, that adversely affects the air, water or soil with which it comes into contact. In other words, although scrap tires contain certain substances that may leach into the environment and contaminate it, the tires, themselves, are not the corrupting or infecting agents.

Oxford contends that the trial court properly determined that the sales tax exemption for other contaminants of air, water or soil applies to its scrap tire removal

---

[18] General Statutes § 1-1 (a) provides: "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly."

services because the commissioner's own definition of "other contaminants of air, water or soil" includes some of the substances contained in scrap tires that have been found to leach into the environment. There is no dispute that leachate from scrap tires contains some substances that fall within the commissioner's definition, particularly those substances for which the state department of environmental protection (department) or federal Environmental Protection Agency has established cleanup standards.[19] Nevertheless, we are not persuaded that this fact buttresses Oxford's claim. As we previously have explained, it is not the scrap tire, itself, that contaminates the environment, but, rather, the leachate that emanates from that tire due to the tire's exposure to the environment. It is undoubtedly for that reason that neither the department nor the Environmental Protection Agency has established cleanup standards for scrap tires; instead, the state and

---

[19] In 1995, the commissioner issued Special Notice 95(17) (notice), entitled "Certain Environmental Services Excluded from Sales and Use Taxes." The notice defines "other contaminants of air, water or soil" under § 12-407 (2) (i) (I). The notice provides in relevant part: "Other contaminants of air, water or soil include the following:

"1. any substance for which a cleanup standard is established by the [department] or the [Environmental Protection Agency], whether or not such substance is present in quantities sufficient to require action under Connecticut or federal environmental laws (cleanup standards presently established by the [department] apply to the contamination of water or soil);

"2. any material spontaneously emitting ionizing radiation;

"3. any substance regulated by the [department] pursuant to chapter 446c of the [G]eneral [S]tatutes (Air Pollution Control) or by the [Environmental Protection Agency] pursuant to the Clean Air Act of 1990 (42 U.S.C. §§ 7401 through 7642); or

"4. any substance listed in the Toxic Chemical Release Inventory (TRI) rule adopted under section 313 of the Emergency Planning and Community Right to Know Act (42 U.S.C. §§ 11001 through 11050). . . ."

The notice also refers taxpayers to the department for assistance in determining "whether a specific material is an 'other contaminant' [of air, water or soil]." As we previously have indicated, the commissioner does not challenge the fact that scrap tires leach substances for which cleanup standards have been established by the department or the Environmental Protection Agency.

federal cleanup standards apply to substances, including some of the components of scrap tires, that contaminate the environment. Thus, although those components are "contaminants," as that term has been defined by the commissioner for purposes of § 12-407 (2) (i) (I), scrap tires are not.

Furthermore, scrap tires pose little or no threat to the environment when they are stored properly, that is, when they are stored in such a manner that the harmful substances contained therein do not leach into the environment to any appreciable extent. In such circumstances, the scrap tires reasonably cannot be characterized as contaminants, whereas the harmful substances contained therein do not lose their identity as such. This fact provides further support for the conclusion that the leachate from a scrap tire, and not the tire, itself, constitutes "other contaminants of air, water or soil" within the meaning of § 12-407 (2) (i) (I).[20]

---

[20] We also note that the department consistently has taken the position that scrap tires are not other contaminants of air, water or soil for purposes of § 12-407 (2) (i) (I). Indeed, in letters issued by the department to Oxford and the commissioner; see footnote 15 of this opinion; Michael J. Harder, the director of the permitting, enforcement and remediation division of the department's bureau of water management, explained that, in the department's view, the sales tax exemption for other contaminants of air, water or soil does not apply to the routine removal of nonhazardous solid waste. As Harder further stated in his letter to the commissioner, "[w]ere it otherwise, the services retained by every municipality and every person in the [s]tate to haul away and dispose of garbage would be tax exempt." According to Harder, prior to Public Acts, Spec. Sess., May, 1994, No. 94-4, § 13, in which the legislature amended § 12-407 (2) (i) (I) by adding the sales tax exemption for the "voluntary . . . removal of . . . other contaminants of air, water or soil"; General Statutes § 12-407 (2) (i) (I); see footnote 16 of this opinion; "the purpose of [§ 12-407 (2) (i) (I)] was to exempt from tax, and thereby encourage as a matter of public policy, clean-ups of hazardous waste released into the environment. [The 1994 amendment] did no more than extend this policy to (i) clean-ups of substances in addition to hazardous waste which do or may threaten human health or the environment and (ii) activities—evaluation and treatment—often associated, frequently as necessary preconditions, with clean-ups of environmental releases."

Harder testified at trial and reiterated the department's interpretation of the exemption for other contaminants of air, water or soil under § 12-407

An important and final consideration provides additional support for the statutory interpretation urged by the commissioner: if we were to construe the language, "other contaminants of air, water or soil"; General Statutes § 12-407 (2) (i) (I); to include scrap tires, that language reasonably could be interpreted to include most, if not all, kinds of nonhazardous solid waste, including household garbage. Because many types of solid waste leach substances for which the department or the Environmental Protection Agency has established cleanup standards, a strong argument can be made that, under the statutory construction advanced by Oxford, the sales tax exemption of § 12-407 (2) (i) (I) extends to all solid waste removal service providers, including refuse haulers. See footnote 20 of this opinion. We do not believe that the legislature intended to create such a broad tax exemption. Indeed, had the legislature intended to exclude all nonhazardous solid waste from the purview of our sales tax statute, it easily could have expressed this intent. See, e.g., *LoPresto* v. *State Employees Retirement Commission*, 234 Conn. 424, 435, 662 A.2d 738 (1995); *Rockville Fish & Game Club, Inc.* v. *Inland Wetlands Commission*, 231 Conn. 451, 461, 650 A.2d 545 (1994). Furthermore, such a construction would be inconsistent with our long-standing precedent requiring that tax exemptions be construed strictly against the taxpayer and that any ambiguity in the language of the exemption be resolved in favor of the commissioner. E.g., *Common Fund* v. *Fairfield*, supra, 228 Conn. 380–81.

Accordingly, we conclude that scrap tires are not "other contaminants of air, water or soil" within the meaning of § 12-407 (2) (i) (I). Because we already have

(2) (i) (I). Although Harder acknowledged that scrap tires are a potential source of environmental contamination, he testified that the substances that leach from the tires, and not the tires, themselves, create the risk of contamination.

determined that scrap tires are not hazardous waste under § 12-407 (2) (i) (I), the trial court improperly concluded that Oxford is entitled to a sales tax exemption for its scrap tire removal services rendered between January 1, 1989, and December 31, 1994.

The judgments are reversed and the case is remanded with direction to render judgments for the commissioner.

In this opinion the other justices concurred.