[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
The following facts are not in dispute. The Plaintiff, Fedus Associates, LLC, ("Fedus") was and is a limited liability company organized and existing under the laws of the State of Connecticut with a principal place of business in Groton, Connecticut. Fedus was and is the owner of certain real property, with structures and improvements thereon, located at 631 Old Hartford Road, Colchester, Connecticut (hereinafter also the "Property"). On or about July 30, 1996 Fedus applied for a permit to construct and a permit to operate a hot mix asphalt batch facility (hereinafter also known as the "Facility") on the property. On or about January 16, 1997, the Connecticut Department of Environmental Protection (hereinafter also "DEP") issued a permit to Fedus to construct and operate the Facility at the Property. Fedus was issued a zoning permit for the property on February 7, 1997 and a building permit on February 14, 1997. On or about March 27, 1997 the Plaintiff, Christopher H. McLaughlin, (hereinafter also known as "McLaughlin") and his solely owned company, Hawk Investments, Inc., purchased the entire membership interest in Fedus for $1.55 million. Subsequently, McLaughlin's solely owned corporation, Soneco/Northeastern, acquired 98% of the membership interest in Fedus.
The expiration date of the permit was one year from the date of issuance or January 16, 1998. On December 1, 1997 the DEP's response to an application by Fedus to extend the expiration date of the permit stated that the DEP had "made a tentative determination to approve the permit to construct and operate a hot asphalt batch plant at Fedus Associates, LLC, 631 Old Hartford Road, Colchester, Connecticut." By final decision of the DEP commissioner dated November 19, 1999 but executed by him on December 1, 1999 the application for extension was denied. The permit was denied based upon the enactment by the legislature CT Page 1951 of Public Act 98-216 which provides in relevant part:
 "Sec. 4. (NEW) No asphalt batching or continuous mix facility shall be located in an area which is less than 1/3 of a mile in linear distance from any hospital, nursing home, school, area of critical environmental concern, water course, or area occupied by residential housing. Such distance shall be measured from the outermost perimeter of such facility to the outermost point of such zones provided that any such facility in operation as of December 31, 1997, shall not be subject to the provisions of this section."[1]
This became CGS Sec. 22a-196. The Plaintiffs' property is located within 1/3 mile of a water course and residential housing. Further, the Facility was not in operation as of December 31, 1997. The commissioner, therefore, notified the Plaintiffs that he could not renew the permit to construct. As a result of Public Act 98-216 and government action to enforce said Act, Fedus was prohibited from completing construction of the Facility and operating the Facility. The Plaintiffs brought this action claiming that said Public Act and the enforcement thereof was an inverse condemnation or taking of the Facility for which the plaintiffs are Constitutionally entitled to compensation. Eminent domain refers to a legal proceeding in which a government asserts its authority to condemn property. Inverse condemnation refers to the manner in which a land owner recovers just compensation for the taking of his property when condemnation proceedings have not been instituted. Plaintiffs' action is based in part on the Fifth Amendment to the United State Constitution and the Fourteenth Amendment to said Constitution as well as Article First
Sec. 11 of the Connecticut Constitution which bar the taking of private property for public use without just compensation. While property may be regulated to a certain extent, if the regulation goes too far, it will be recognized as a taking. This type of taking is known as "inverse condemnation" or, alternatively, as a "regulatory taking".
 ISSUES 1. The first issue raised by the Defendant in its Motion for Summary Judgment is the claim that Fedus Associates, LLC, is not a proper plaintiff; namely, that there was a different ownership or membership of Fedus Associates, LLC, when the original application for a permit from DEP was granted. It is true that at the time of the application and the granting of the permit the membership of Fedus Associates, LLC was different from the present membership which is essentially Christopher H. McLaughlin who purchased all of the membership interests in Fedus CT Page 1952 through himself and corporations solely owned by him on March 27, 1997. Defendant claims that under CGS Sec. 22a-Go "any transfer of a license must have the approval of the Commissioner of the DEP." If there was a transfer to another individual such as Christopher H. McLaughlin, then, the Defendant might have a point. However, there is nothing in the aforementioned section which provides that there is a transfer when the membership of the permit holder changes. It is somewhat similar to a situation in which a party purchases the stock in a corporation from the majority stockholder, but the corporation that held onto the original permit still exists. If the legislature had wanted to prohibit transfer of the ownership of a permit holder, then it had the opportunity to say so. Other statutes provide for regulation if more than a certain percentage, such as 40%, of an LLC or a corporation is transferred. This is not the case with Sec. 22a-Go. Said section prohibits the transfer from a person who holds a permit to another person. However, there is nothing in the statute prohibiting a transfer of membership of the entity holding the permit, which is the case here.[2] Accordingly, this Court finds that there was no illegal transfer of the permit. The Plaintiff, Fedus Associates, LLC, is the proper plaintiff in this action.
2. Defendant next contends that the permit in question was conditional, non-renewable and expired within one year after it was issued. Defendant cites page 10 of the permit which states in pertinent part: "All emission testing must be completed and the results found acceptable by this Department within twelve months after issuance of this permit. The final permit to operate will not be issued until acceptable emission test results documenting MASC compliance have been received and reviewed by this Department." It's true that Fedus Associates, LLC had applied for a renewal of the permit even though it was a temporary and/or conditional permit, although neither word is used in the permit itself. CGS Sec. 4-182 (b) provides, inter alia, "that if a licensee (Fedus Associates, LLC) makes a timely application for the renewal of a license the existing license shall not expire until the application has been finally determined by the agency". Thus, under that statute the permit was in effect until the final decision of the DEP commissioner on December 1, 1999. Therefore, Fedus Associates, LLC had a property right in the permit on June 1, 1998, the effective date of Public Act 98-216. This statute prevails over the DEP regulation Sec. 22a-174-3 (g)(3).
Additionally, "A vested right is one that equates to legal or equitable title to the present or future enjoyment of property, or to the present or future enforcement of a demand, or a legal exception from a demand made by another" Oxford Tire Supply, Inc. v. Commissioner of RevenueServices, 253 Conn. 683, 694 fn. 15 (July 18, 2000). Another test of a vested right is whether the party claiming such a right "reasonably and justifiably relied to its detriment" on an expectation that it would be CT Page 1953 permitted to engage in the now-prohibited activity or receive a benefit which has been eliminated. Oxford Tire, supra, 694. In Marmah, Inc. v.Town of Greenwich, 176 Conn. 116, 221 (1978) it was held that vested rights in a building permit are created where substantial work has been undertaken in the construction of a building before zoning regulations are amended. It is an issue of fact as to whether or not substantial work had been undertaken pursuant to the original permit in the case at bar.
For the foregoing reasons, this Court is not issuing a summary judgment against the Plaintiffs on the basis of the Defendant's claims of improper plaintiff and lack of a property right.
3. The United States Supreme Court in a relatively recent decision in the case of Anthony Palazzolo v. Rhode Island, Et Al, 150 L Ed 2d 592,616 (June 28, 2001) the Court remanded the case back to the state courts for a Penn. Central analysis. The Defendant has cited numerous federal and state cases that seem to hold that the only situation in which compensation is awarded is when the owner of land is deprived totally of any economic benefit. That would be a taking for which compensation would be in order. Defendant further states that diminution in value of the premises is not sufficient to constitute a taking and that as long as the property has some economic benefit, it is not a taking. In this case, the defendant contends that the premises could have been used for the rock and gravel pit which was the use before the attempt to build an asphalt plant was made and the fact that the Plaintiffs sold the premises for approximately $710,000 all point to its having some economic value without the permit.
However, the case of Penn. Central Transportation Co. v. The City ofNew York, 438 U.S. 104, 130-131 (1978) establishes a balancing test to determine whether a compensable taking has occurred. The Penn. Central
test requires a factual inquiry into the following two factors that are relevant to this case:
"(1) The economic impact of the regulation on the property owner;
(2) The regulation's interference with the property owner's investment backed expectations;"
In Penn. Central, supra, the Court has stated the following: ". . . this Court quite simply has been unable to develop any `set formula' for determining when `justice and fairness' require that economic injuries caused by public action be compensated by the government rather than remain disproportionately concentrated on a few persons. . . . . . Indeed, we have frequently observed that whether a particular restriction will be rendered invalid by the government's failure to pay for any CT Page 1954 losses proximately caused by it depends largely `upon the particular circumstances [in that] case' Id. 123. Further, the Penn. Central Court also stated that "it is, of course, implicit in Goldblatt that a use restriction on real property may constitute a `taking' if not reasonably necessary to the effectuation of a substantial public purpose. . . ., orperhaps if it has an unduly harsh impact upon the owner's use of theproperty." Emphasis added. Id. 127.
For the foregoing reasons, the balancing test of Penn. Central is appropriate, and that is a factual issue or determination.
Since there are disputed issues of fact and/or the Court should receive evidence, as a fact finder, as to the criteria set forth in Penn.Central, supra, summary judgment is not proper.
Accordingly, both motions for summary judgment are denied.
 ___________________ Rittenband, JTR