# RENAISSANCE MANAGEMENT COMPANY, INC. *v.* COMMISSIONER OF REVENUE SERVICES*

Superior Court, Judicial District of New Britain, Tax Session
File No. CV010506140S

Memorandum filed September 30, 2002

*Siegel, O'Conner, Zangari, O'Donnell & Beck, P.C.,* for the plaintiff.

*Jonathon L. Ensign,* assistant attorney general, for the defendant.

---

* Affirmed. *Renaissance Management Co.* v. *Commissioner of Revenue Services,* 267 Conn. 188, 836 A.2d 1180 (2003).

HON. ARNOLD W. ARONSON, JUDGE TRIAL REF-EREE. The issue in this case is whether management fees paid to a property manager, related to reimbursement for separately stated payroll overhead expenses paid on behalf of eight separate apartment complexes, are included in the gross receipts from the sale of management services and therefore subject to the payment of a sales or use tax.

The plaintiff, Renaissance Management Company, Inc. (Renaissance), appeals from the determination by the defendant, the commissioner of revenue services (commissioner), pursuant to General Statutes § 12-422, that during the audit period of October 1, 1993, through September 30, 1996, Renaissance was not exempt from sales and use taxes on gross receipts derived from the furnishing of property management services.

During the audit period, Renaissance was a property management company that managed eight low income housing projects in the New Haven area totaling 318 apartment units. Each of the eight projects was separately owned by a limited partnership. Each of the limited partnerships entered into management agreements with Renaissance to provide direct bookkeeping and accounting service personnel through a consolidated payroll account maintained by Renaissance, and to maintain each property owned by the limited partnerships in a good, safe and sanitary condition and in a rentable state of repair, in accordance with regulatory agreements between the limited partnerships and the state of Connecticut. The management agreements between the limited partnerships and Renaissance provided that all employees must be employees of Renaissance except those employees that Renaissance hired to supervise and discharge maintenance and janitorial employees. The regulatory agreements required the limited partnerships to pay the salaries and fringe benefits,

and local, state and federal taxes incident to the employment of such maintenance and on-site personnel. The limited partnerships reimbursed Renaissance for the payment of such operating expenses from an operating account established by Renaissance for the benefit of the eight limited partnerships. Because each property managed by Renaissance was not large enough to require an employee dedicated to it on a full-time basis, Renaissance's employees performed management and janitorial services at or for the various properties owned by the limited partnerships.

In *AirKaman, Inc.* v. *Groppo*, 221 Conn. 751, 764, 607 A.2d 410 (1992), our Supreme Court held that reimbursement for payroll related expenses was not part of the "sales price" or "gross receipts" from the sale of management services because "a mere transfer of expenses between parties cannot be regarded as a sale of services . . . [since] the fee earned by the plaintiffs clearly constituted payment for managerial services rendered, while the reimbursement received by them was simply the return of moneys expended by the plaintiffs on [the service recipient's] behalf." In 1992, in response to the *AirKaman, Inc.*, decision, the legislature enacted in the May special session, Public Acts, Spec. Sess., May, 1992, No. 92-17, § 21, which amended the definitions of "sales price" and "gross receipts" to provide that "[s]uch total amounts [of sales price or gross receipts] include . . . (c) all compensation and all employment related expenses, whether or not separately stated, paid to or on behalf of employees of a retailer of any service described in subdivision (i) of subsection (2) of this section . . . ." General Statutes (Rev. to 1993) § 12-407 (8) and (9); see department of revenue services, Special Notice 93 (2), "Sales and Use Taxes on Charges Made by Service Providers after *Air-Kaman, Inc.* v. *Groppo* and 1992 Conn. Pub. Acts 17

(May Spec. Sess.)," issued April 13, 1993. The commissioner claims that these statutory amendments "effectively prohibited retailers of all taxable services, including management services from excluding their payroll overhead from their sales price by characterizing it as a separately stated reimbursement."

General Statutes (Rev. to 1993) § 12-407 (8) and (9)[1] excluded from the definitions of "sales price" and "gross receipts" "the amount charged for separately stated compensation, fringe benefits, workers' compensation and payroll taxes or assessments paid to or on behalf of employees of a retailer who has contracted to manage a service recipient's property or business premises and renders management services described in subdivision (i) of subsection (2) of this section, provided (A) *the employees perform such services solely for the service recipient at its property or business premises* and (B) ['sales price' or 'gross receipts'] shall include the separately stated compensation, fringe benefits, workers' compensation and payroll taxes or assessments paid to or on behalf of any employee of the retailer who is an officer, director or owner of more than five per cent of the outstanding capital stock of the retailer. . . ." (Emphasis added.) General Statutes (Rev. to 1993) § 12-407 (8) (f) and (9) (f).

The commissioner interprets the provision in subparagraph (A) to exempt only the payroll expenses of employees who work solely at one property for one owner. Renaissance argues that none of the individual apartment projects is large enough to require each of the limited partnerships to hire a person dedicated on a full-time basis to handle the accounting, maintenance and janitorial work for each project. Renaissance claims

---

[1] The substance of the provisions at issue in this case has remained unchanged throughout the audit period and to the present; however, over the years, the subsections and subdivisions within each section have been renumbered.

that neither logic nor our statutes require such a result to make taxable the accounting, maintenance and janitorial costs paid by Renaissance but reimbursed by the limited partnerships.

The commissioner views this narrow exception to the taxation of management services to apply in this case only to the situation in which a Renaissance employee has been assigned to one of the apartment projects and works full-time at that project. See department of revenue services, Special Notice 93 (2), supra. We agree with the commissioner's understanding of this exemption. A management service retailer, such as Renaissance, may exempt payroll expenses of an employee from its taxable gross receipts only when the employee works solely for one service recipient, in this case, one of the eight housing projects, and the employee is located only at that single business property.

In construing a statutory exemption, "we employ three overlapping presumptions. First, statutes that provide exemptions from taxation are a matter of legislative grace that must be strictly construed against the taxpayer. Second, any ambiguity in the statutory formulation of an exemption must be resolved against the taxpayer. Third, the taxpayer must bear the burden of proving the error in an adverse assessment concerning an exemption." *Oxford Tire Supply, Inc.* v. *Commissioner of Revenue Services*, 253 Conn. 683, 690, 755 A.2d 850 (2000). The plaintiff has failed to carry this heavy burden of showing that the narrow exemption described in § 12-407 (8) and (9) can be expanded to include separately stated expenses of Renaissance's employees who are not located at, and who do not solely devote their time to, one housing project. The governmental regulatory agreements that control the operation of the eight separate low income housing projects do not override the intent of the statutes in

issue. We recognize the problem of Renaissance that, for the most part, the individual housing projects are not large enough to require a person to dedicate his or her efforts on a full-time basis. Unless, however, an employee of Renaissance is located at a specific housing project and devotes all of his or her efforts solely to that one project, Renaissance cannot come within the narrow framework of this statutory exemption.

Accordingly, judgment may enter in favor of the defendant commissioner dismissing this appeal without costs to either party.