[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO STRIKE
This is a Memorandum of Decision on a Motion to Strike the defendants' special defenses raising the issue of sovereign immunity, in what otherwise would appear to be a routine liability claim by a passenger of one motor vehicle for personal injuries sustained in a collision between two motor vehicles. The defendants are the operators and owners of both motor vehicles. Three additional defendants have been joined since it is alleged that the operator of the motor vehicle in which the plaintiff was a passenger was the employee and/or agent of these three additional defendants. Special defenses of sovereign immunity have been filed by these additional defendants.
 FACTS
The plaintiffs in this action are Eytan Nisinzweig and his parents. Eytan, then nine years old, suffered severe injuries to his brain and other portions of his body on February 22, 1995 in Wilton, CT, when he was a passenger in a vehicle operated by the named defendant, Joseph P. CT Page 11311 Kurien. The vehicle was owned by the defendant, Chacko C. Kurien. Joseph P. Kurien was operating in a northerly direction on Route 7 in Wilton, CT, when he crossed over the center line to the south bound lane of Route 7 and crashed head on into the vehicle being operated by the named defendant, James F. Carch. February 22, 1995 was a school day. On that day, Eytan Nisinzweig was a public school student being educated by the additional defendant, Board of Education of the Town of Greenwich. Eytan was a special education student and was being transported to the school facilities provided by the Board of Education of the Town of Greenwich in Wilton, CT on February 22, 1995. For some time prior Eytan had been transported by the Board of Education of the Town of Greenwich since it had determined that such a school facility was appropriate for him.
The complaint alleges that Joseph P. Kurien was the employee or agent of the additional defendant, Kelly Transportation Company. Kelly Transportation Company had a contract with the additional defendants, Town of Greenwich and/or the Board of Education of the Town of Greenwich, to provide transportation for public school students including that of the special education student, Eytan Nisinzweig. The plaintiffs further allege that Joseph P. Kurien was the employee or agent of all three named additional defendants, Kelly Transportation Company, Town of Greenwich and the Board of Education of the Town of Greenwich.
The plaintiffs' complaint claims liability on behalf of all named defendants in the following manner: (1) liability for negligence against the Town of Greenwich, the Board of Education of Town of Greenwich and Kelly Transportation Company based upon the theory of respondeat superior in that the defendant, Joseph P. Kurien, was the agent, servant or employee of those three named defendants and was operating the vehicle within the scope of his agency or employment; (2) liability for negligence against the Town of Greenwich and the Board of Education of the Town Greenwich for their actions in hiring the defendant, Kelly Transportation Company; and (3) breach of duty as a common carrier against Kelly Transportation Company in accordance with General Statutes § 52-557 (c).
In response to those allegations the defendants, Town of Greenwich and the Board of Education of the Town of Greenwich, filed the following special defense contained in their answer of August 20, 1999.
 At the time of the events complained of, the minor plaintiff, Eytan Nisinzweig, was a child identified in need of special education services under § 10-76a
et seq. of the Connecticut General Statutes, was receiving said services, including transportation services, and was being transported to an educational CT Page 11312 program developed for him as mandated by state law. Accordingly, at all applicable times, the transportation of Eytan Nisinzweig to school involved duties for which Greenwich was responsible as an agent of the State of Connecticut, and therefore, the doctrine of sovereign immunity applies to bar the plaintiffs' claims in this action.
Kelly Transportation Company filed an answer dated August 24, 1999 which included the following special defense:
 At the time and places alleged in the plaintiff[s]' complaint, the defendant Kelly Transportation Company was employed as an agent, servant or employee of the Town of Greenwich and/or the Town of Greenwich Board of Education. Thus, the doctrine of sovereign immunity is a bar to the cause of this action.
The plaintiffs filed a Motion to Strike each of the two above special defenses labeled: "Plaintiffs' Motion to Strike Defendants' Sovereign Immunity Special Defenses," along with supporting memoranda. Each of the additional defendants filed an objection to the Motion to Strike and memoranda in support of their legal positions. Neither the operators nor owners filed any documents in regard to the motion to strike or joined in the argument. None of the parties raised any procedural objections to the court considering these two separate special defenses filed by two separate defendants with different wording in the one Motion to Strike filed, dated November 11, 1999. The court, therefore, will consider the Motion to Strike of November 11, 1999 as applicable to both the special defenses, the first filed by the defendants, Town of Greenwich and the Board of Education of the Town of Greenwich, dated August 20, 1999 and the second special defense filed by the defendant, Kelly Transportation Company, dated August 24, 1999.
The plaintiff's claim that there are five reasons why the special defenses alleging sovereign immunity are legally insufficient:
(1) None of the three additional defendants are entitled to sovereign immunity as such immunity has been abrogated by General Statutes §52-556;
(2) General Statutes § 52-557 permits a right of action by injured school children against municipalities for negligence in transporting the children to and from school, and bars the special defense of sovereign immunity as sovereign immunity fell within the definition of governmental duty when the statute was enacted; CT Page 11313
(3) The defendants' application of General Statutes § 52-557 so as to preclude a right of action by disabled students as distinguished from non-disabled students, unlawfully discriminates against the disabled students on the basis of their disability in violation of Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794 (a)), the Americans with Disabilities Act (42 U.S.C. § 12101 et. seq.) and General Statutes § 46a-58 et seq.;
(4) Permitting the defenses of sovereign immunity to bar the plaintiffs' cause of action denies the plaintiffs the right to open and equal access to the courts in violation of article first, § 10 of the Connecticut constitution;
(5) Interpreting General Statutes § 52-557 to preclude a right of action by special education students against municipalities and their agents violates such students' right to equal education opportunities under article eighth, § 1 of the Connecticut constitution and the equal protection of the laws under article first, §§ 1 and 20 of the Connecticut constitution, as amended by article twenty-one of the amendments, and amendment XIV, § 1 of the United States constitution.
The issue of qualified municipal immunity has not been raised by these special defenses and has not been addressed by the five reasons set forth in the plaintiffs' Motion to Strike.
 DISCUSSION OF LAW
A Motion to Strike is the proper vehicle to use to attack the sufficiency of a special defense. "Whenever any party wishes to contest . . . (5) the legal sufficiency of any answer to any complaint, counterclaim or cross complaint, or any part of that answer including any special defense contained therein, that party may do so by filing a motion to strike the contested pleading or part thereof." Practice Book §10-39(a).
"Because a motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court, our review of the court's ruling on the [plaintiff's motion] is plenary. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . Moreover, we note that [w]hat is necessarily implied [in an allegation] need not be expressly alleged. . . . It is CT Page 11314 fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted. . . . Indeed, pleadings must be construed broadly and realistically, rather than narrowly and technically. . . ." (Citations omitted; internal quotation marks omitted.) Doe v. Yale University, 252 Conn. 641, 667
(2000).
A claim of sovereign immunity implicates the court's subject matter jurisdiction. Amore v. Frankel, 228 Conn. 358, 364 (1994); Tamm v.Burns, 222 Conn. 280, 289 (1992). A motion to dismiss had been held to be an appropriate method of raising the issue of sovereign immunity. Lussierv. Dept. of Transportation, 228 Conn. 343, 347 (1994); Practice Book § 10-31(a)(1); Novicki v. City of New Haven, 47 Conn. App. 734, 739
(1998). Once the issue of subject matter jurisdiction is raised, it must be acted on. Gurliacci v. Mayer, 218 Conn. 531, 545 (1991). Although it appears that a Motion to Dismiss is the proper method of presenting the issue to the trial court, none of the parties have argued that the issue cannot be addressed by this Motion to Strike. The use of a motion to strike to determine the issue of sovereign immunity in a claim for automobile liability against a Board of Education has been approved by the Supreme Court without comment. Heigl v. Board of Education,218 Conn. 1, 2 (1991). The use of a Motion to Dismiss permits the taking of evidence. Standard Tallow Corp. v. Jowdy, 190 Conn. 48, 56 (1983). On the other hand, no evidence can be taken on a motion to strike and the issues must be decided on the pleadings. "We take the facts to be those alleged in the amended complaint construed in a manner most favorable to the pleader . . . All well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted." Amodio v.Cunningham, 182 Conn. 80, 82-83 (1980). The court believes the pleadings in this case contain sufficient information for this court to decide the sovereign immunity issue by the use of this Motion to Strike.
"The state is immune from suit unless it consents to be sued by appropriate legislation waiving sovereign immunity in certain proscribed cases." White v. Burns, 213 Conn. 307, 312 (1990). "The source of sovereign power in the state of Connecticut is the constitution, and it is recognized that a sovereign is immune from suit on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends . . . This doctrine encompasses suits against the agents of the state government as well as those against the sovereign state itself, for the state can act only through its officers and agents." (Internal citations omitted). Herzigv. Horrigan, 34 Conn. App. 816, 818 (1994). "The state legislature, however, possesses the authority to abrogate any governmental immunity by statute that the common law gives to the state and municipalities." WhiteCT Page 11315v. Burns, supra, 213 Conn. 312. Sovereign immunity can be waived by appropriate legislative action. Berger, Lehman Associates, Inc. v. State,178 Conn. 352, 356 (1979).
"A party who wishes to sue under the legislative waiver must come clearly within its provisions because statutes in derogation of sovereign immunity should be strictly construed in favor of the state, so that its sovereignty may be upheld and not narrowed or destroyed." Duguay v.Hopkins, 191 Conn. 222, 232 (1983). By implication a statute can waive sovereign immunity. Baker v. Ives, 162 Conn. 295, 298 (1972). Accordingly, where a statute or court rule sets prerequisites to suit by a particular plaintiff, a plaintiff not meeting the statutory criteria lacks standing and the court is said to lack jurisdiction over the case.Mystic Marinelife Aquarium, Inc. v. Gill, 175 Conn. 483, 492-93 (1978). "The question of whether a particular statute or regulation applies to a given state of facts is a question of statutory interpretation." PlasticDistributors, Inc. v. Burns, 5 Conn. App. 219, 225 (1985). Statutory interpretation presents a question of law for the court. Id. 225;Robinson v. Unemployment Security Board of Review, 181 Conn. 1, 6
(1980). "When sovereign immunity has not been waived, the claims commissioner is authorized by statute to hear monetary claims against the state and determine whether the claimant has a cognizable claim." Krozserv. New Haven, 212 Conn. 415, 421 (1989); General Statutes §§ 4-141
through 4-165b. In this case, no claim has been filed with the Claims Commissioner and there is no evidence that such a filing could or would be made by the plaintiffs. General Statutes § 4-160. The one year for filing such a claim has long since expired. General Statutes § 4-148.
The doctrine of sovereign immunity is not an absolute bar to suits against the State. In addition to the statutory exception and the provision for suit after approval by the Claims Commission, case law has loosened the strictness in the application of the doctrine. This absolute bar of actions against the state has been greatly modified both by statutes effectively consenting to suit in some instances as well as by judicial decisions in others. Shay v. Rossi, 253 Conn. 134, 168 (2000);Doe v. Heintz, 204 Conn. 17, 31 (1987). The state is not bound by legislative proscriptions unless the law's proscriptions are directed specifically to the state. State of Connecticut v. City of Hartford,50 Conn. 84, 91 (1882). "Unconstitutional or unauthorized acts of the state are not protected by the doctrine of sovereign immunity." Fettermanv. University of Connections, 192 Conn. 539, 552 (1984). Dixon v.Statewide Grievance Committee, Superior Court, judicial district of New Haven at New Haven, Docket No. CV00-0440644 S (November 27, 2000, Silbert, J.) (29 Conn. L. Rptr. 36) (7 Conn.Ops. 16) (2000 Ct. Sup. 14530). CT Page 11316
 Sovereign immunity rests on the principle and on the hazard that the subjection of the state and federal governments to private litigation might constitute a serious interference with the performance of their functions and with their control over their respective instrumentalities, funds and property. J. Block, Suits against Government Officers and the Sovereign Immunity Doctrine, 59 Harv.L.Rev. 1060, 1061 (1946). In a constitutional democracy sovereign immunity must relax its bar when suits against the government complain of unconstitutional acts. Sentner v. Board of Trustees,
supra, 184 Conn. 343. When a state official's acts are in excess of legal authority or constitute an erroneous exercise of that authority, the interest in the protection of such action outweighs the interest served by the sovereign immunity doctrine. (Internal quotation marks omitted.) Horton v. Meskill, supra, 172 Conn. 624. Therefore, [t]he state is subject to suit without consent . . . in a suit for injunctive relief when the action does not defeat the purpose of the doctrine of sovereign immunity by undue interference with governmental functions. Duguay v. Hopkins, 191 Conn. 222, 227 n. 4; Pamela B. v. Ment, 244 Conn. 296 (1998); cf. also, Unisys Corp. v. Departmental of Labor, 220 Conn. 689 (1991); Sentner v. Board of Trustees, 184 Conn. 339 (1981).
Charter Communication Entertainment I, LLC v. The University ofConnecticut, Superior Court judicial district of Tolland, Complex Civil Litigation Docket No. X07CV 000072038 S (March 23, 2000, Bishop, J.) (27 Conn. L. Rptr. 11) (6 Conn.Ops. 379) (2000 Ct. Sup. 3190).
"The doctrine of sovereign immunity does not mandate that all suits against government officers in either their official or individual capacities, since they are in effect against the government, must be barred. The rule is well settled, however, that a suit against an officer of a state as representing the state in action and liability, where the state is the real party against whom relief is sought, and where judgment for the plaintiff, although nominally against the officer as an individual, would operate to control the action of the state or subject it to liability, is barred." Letterman v. University of Connecticut,
supra, 192 Conn. 552. "The modern purpose of the sovereign immunity doctrine rests not on arguably ancient and outdated concepts, but, rather, on the purpose of preventing serious interference with governmental functions and the imposition of enormous fiscal burdens on the state by subjecting its government to private litigation. FettermanCT Page 11317v. University of Connecticut, 192 Conn. 539, 552 (1984); Horton v.Meskill, 172 Conn. 624." Herzin v. Horrigan, supra, 34 Conn. App. 819.
"A suit against a municipality is not a suit against a sovereign. Towns have no sovereign immunity, and are capable of suing and being sued . . . in any action." Murphy v. Ives, 151 Conn. 259, 264 (1963); ModernCigarette, Inc. v. Orange, 256 Conn. 105, 134 (2001). Agents of the state may claim the protection of sovereign immunity. Herzig v. Horrigan,
supra, 34 Conn. App. 818. "A town board of education can be an agent of the state for some purposes and an agent of the municipality for others."Heigl v. Board of Education, supra, 218 Conn. 3-4; Cahill v. Board ofEducation, 187 Conn. 94, 101 (1982). A board of education can be held liable for negligence pursuant to General Statutes § 52-557n(a)(1)(A), which permits a direct action against such board for the negligence of its employees. Russell v. McKenna, Superior Court, judicial district at New London at New London, Docket No. 541208 (February 26, 1998, Handy, J.) (1998 Ct. Sup. 2244); Bongiovanni v. Board of Education, Superior Court, judicial district at Stamford-Norwalk, Docket No. CV90 0110243 (April 29, 1994, Lewis, J.) (9 C.S.C.R. 617) (1994 Ct. Sup. 4630).
"There is no question but that local boards of education act as agencies of the state when they are fulfilling the statutory duties imposed upon them pursuant to the constitutional mandate of article eighth, § 1 . . . Local boards of education are also agents of the municipality that they serve, however. . . ." (Citations omitted.)Cheshire v. McKenney, 182 Conn. 253, 258 (1980). "Local boards of education are not agents of the state, however, in performing each and every mandated action . . . Local boards of education act as agents of the state when fulfilling the statutory duties "imposed upon them by the legislature in light of the state constitutional mandate to furnish public education. Local boards of education also are agents of the towns, subject to the law governing municipalities, when acting on behalf of the municipality in its function of mandating control over the public schools within the municipality's limits." (Citations omitted.) R.A. CivitelloCo. v. New Haven, 6 Conn. App. 212, 218-19 (1986).
If the three additional defendants are not acting as an arm of the state, and thus, possess no sovereign immunity, they are susceptible to suit. "A political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties." General Statutes § 52-55n (a)(1). A municipality is a "political subdivision of the state" under General Statute § 52-557n. Elliott v. Waterbury,245 Conn. 385, 394-95 (1998). The town is therefore statutorily liable for the negligent operation of municipal school buses. General Statutes CT Page 11318 § 52-557. The state is also liable by statute for the negligent operation of school buses owned by the state. General Statutes § 52-556. The standards of care of a common carrier apply to the operation of school buses, regardless of whether they are owned by the state, municipality or any other person or entity. General Statutes § 52-557c. In addition, the legislature has set forth general principles of municipal liability and immunity. General Statutes § 52-557n;Williams v. New Haven, 243 Conn. 763, 767 (1998). Despite the passage of General Statutes § 52-557n in the mid 1980's tort reform and the passage of the special education obligations of local boards of education a decade earlier, the legislature did not see fit to carve out a special education transportation exception when it listed ten specific courses of conduct for which a municipality shall not be liable. General Statutes § 52-557n(b); Tyron v. North Branford, 58 Conn. App. 702, 721
(2000).
An employee of the state may also be liable even when the acts are normally protected by sovereign immunity, if those acts violate a state public policy. Antinerella v. Rioux, 229 Conn. 479, 487-488 (1994). A state agency employer may be liable for actions taken in excess their statutory authority where those actions are violative of public policy. Id. 488. Antinerella v. Rioux held that fee splitting, was in contravention of General Statutes §§ 6-36 and 6-49, was such a public policy violation. Neither of these statutes provided that the violator could be punished by a fine or incarceration. The violation of motor vehicle operation statutes including recklessness and multiple other statutory violations as alleged in this case, are violations of the public policy of the state regarding prohibited conduct involving the operation of motor vehicles. One statute alleged in the complaint provides for incarceration. All provide for fines. Others may involve license suspension. Isaac v. Truck Service, Inc., 253 Conn. 416, 423 (2000) ("It is indisputable that automobile accidents are one of the most common occurrences in our society in general, and in our state in particular, that result in civil litigation in our courts."); State v. Anonymous,36 Conn. Sup, 527, 529 (1980); Practice Book § 44-37(4) ("Offense means any crime or violation which constitutes a breach of any law of this state or any local law or ordinance of a political subdivision of this state, for which a sentence of a term of imprisonment, or a fine, or both, may be imposed, including infractions."). Motor vehicle violations are now included under the definition of "offense" after the decision inState v. Anonymous, supra, 36 Conn. Sup, 529-30.
 CONCLUSION
Under the facts and pleadings of this case, the Motion to Strike the two special defenses must be granted. The reasons for the granting are as CT Page 11319 follows:
I. The Board of Education of the Town of Greenwich and the Town of Greenwich, as well as Kelly Transportation Company, are not entitled to sovereign immunity under the facts of this case.
Connecticut's rule of sovereign immunity is rooted in common law and most recently was enacted into a constitutional amendment. Unlike the United States constitution, the early Connecticut constitution did not contain the defense of sovereign immunity. Bergner v. State, 144 Conn. 282,284-87 (1957); Horton v. Meskill, 172 Conn. 615, 623 (1977). An amendment to the Connecticut constitution was adopted in 1958. "Claims against the state shall be resolved in such manner as may be provided by law." Conn. Const., art. 11, § 4. A Claims Commission was established in the 1959 session of the General Assembly, which is now governed by General Statutes §§ 4-141 through 14-165b. Prior thereto, sovereign immunity was a common law doctrine. Baker v. Ives, supra, 162 Conn. 298;Fidelity Bank v. State, 166 Conn. 251, 253 (1974).
"The doctrine of sovereign immunity, which establishes that the state cannot be sued without its consent, is well recognized in Connecticut. The protection afforded by this doctrine has been extended to agents of this state acting in its behalf. Town boards of education, although they are agents of the state responsible for education in the towns, are also agents of the towns and subject to the laws governing municipalities. Thus, a local board of education is bound by and may sue or be sued on contracts in the same manner as municipal corporations." (Citations omitted.) Cahill v. Board of Education, supra, 187 Conn. 101-02. Even though a board of education is, under certain circumstances, an agent of state, the doctrine of sovereign immunity does not apply to all lawsuits in which the municipal board of education is named as a defendant. Heiglv. Board of Education, 218 Conn. 3-4. Sovereign immunity does not apply to negligent use of property entrusted to a local board of education. "The plaintiffs allege that the defendants failed to provide trained supervisors at the roller-skating event. This duty is not encompassed within the statutory duties imposed upon local boards pursuant to the state constitution. Based upon the above authorities, neither the board, its employees, nor its members were acting as agents in connection with maintaining control over the school during the roller-skating event. Thus, sovereign immunity does not bar the claim against the defendants."Kosloff v. Fairfield County of Boy Scouts, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV 91-280331 (February 25, 1992, Spear, J.) (1992 Ct. Sup. 1143).
The field of sovereign immunity has been occupied to a greater extent by the United States constitution in the eleventh amendment. "The CT Page 11320 Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The eleventh amendment has been extended to prohibit suits by all persons regardless of their state residency against a state in federal court. Hans v. Louisiana, 134 U.S. 1, 10-11, 10 S.Ct. 504,505-06, 33 L.Ed. 842 (1890). It also bars suits where the state is not named as a party but another entity claimed to be an arm of the state is sued. Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355,39 L.Ed.2d 662 (1974).
No Connecticut case discusses the analysis necessary to determine if a local board of education is an arm of the state or an arm of the municipality. In determining whether a local school board is afforded the protections consistent with the doctrine of sovereign immunity, the courts look to whether the suit would operate to control or interfere with the activities of the state, or subject it to liability. Cahill v. Board ofEducation, supra, 187 Conn. 102; Somers v. Hill, 143 Conn. 476, 479-80
(1956); R.A. Civitello Co. v. New Haven, supra, 6 Conn. App. 218. "The court must determine whether, in fact, the state is the real party in interest by examining "the essential nature and effect of the proceeding' and whether a judgment would operate to control the activities of the state or subject it to liability." Somers v. Hill, supra, 143 Conn. 479-80;Lostumbo v. Board of Education, 36 Conn. Sup. 293, 295 (1980). An examination of federal cases discussing the eleventh amendment is instructive in determining whether the Board of Education of the Town of Greenwich is an "arm of the state" and thus, entitled to sovereign immunity. Connecticut has commented favorably on this procedure, citing a 1945 United States Supreme Court eleventh amendment case. "The vital test is to be found in the essential nature and effect of the proceeding. FordMotor Co. v. Department of Treasury, 323 U.S. 459, 464, 65 S.Ct. 347,89 L.Ed. 389; Gallena v. Scott, 11 N.J. 231, 237, 94 A.2d 312; Town of Ohiov. People, 264 App.Div. 220, 222, 35 N.Y.S.2d 107." Somers v. Hill,
supra, 143 Conn. 479.
The leading case discussing the eleventh amendment "arm of the state" test is Mancuso v. New York State Thruway Authority, 86 F.3d 289 (2nd
Cir. 1996). The owner of a marina brought a lawsuit against the New York State Thruway Authority alleging that the defendants had violated the Clean Water Act by discharging pollutants into New Rochelle Harbor. In holding that the New York State Thruway Authority was not entitled toeleventh amendment sovereign immunity, the court discussed and applied various factors. Six factors were derived from Lake Country Estates,Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391, 99 S.Ct. 1171,59 L.Ed.2d 401 (1979). Those factors are: (1) how the entity is referred to in the documents that created it; (2) how the governing members of the CT Page 11321 entity are appointed; (3) how the entity is funded; (4) whether the entity's function is traditionally one of local or state government; (5) whether the state has a veto power over the entity's actions; and (6) whether the entity's obligations are binding upon the state. In the event that "those factors point in different directions," then an additional analysis should be conducted using the twin considerations of protecting the state's fisc and dignity: "(a) will allowing the entity to be sued in federal court threaten the integrity of the state? and (b) does it expose the state treasury to risk?" Mancuso v. New York StateThruway Authority, supra, 86 F.3d 293; Feeney v. Port AuthorityTrans-Hudson Corp., 873 F.2d 628, 630-31 (2d Cir. 1989). Mancuso found the six factors in equipoise and then turned "to the two purposes underlying the Eleventh Amendment-protection against state liability and respect for state sovereignty." Mancuso v. New York State ThruwayAuthority, supra, 86 F.3d 296. After finding that the state's fisc and dignity were not fully implicated, Mancuso held that the New York State Thruway Authority was not entitled to eleventh amendment immunity.
The six factors of Lake Country Estates now will be reviewed.
(1) How the entity is referred to in the documents that created it. In colonial Connecticut, educational facilities were provided by municipalities well before boards of education were created on a statewide basis. Spencer Ex rel. v. Fargo, 114 Conn. 527, 528 (1932). Prior to the statutory establishment of local boards of education, municipalities established school agencies that were referred to by other names including town school committees, board of education visitors, board of education and district committees. Spencer Ex rel. v. Fargo,
supra, 114 Conn. 528. Teachers were required to be appointed by each town in 1650. Horton v. Meskill, supra, 172 Conn. 615. It appears that town school agencies were first created by statute in 1798 and were then known as school societies. Keegan v. Thompson, 103 Conn. 418, 420 (1925). School districts by the early statutes could be formed, altered and divided by the towns within the limits of which they exist. Hassert v.Carroll, 85 Conn. 23, 33 (1911). There was no reference to the "State" in the early statutes that created what have now become local boards of education.
The state has mandated by current statutes that towns are to maintain schools. "Public schools including kindergartens shall be maintained in each town for at least one hundred eighty days of actual school sessions during each year." General Statutes § 10-15. All children five years of age and over have "an equal opportunity to participate in the activities, programs and courses of study offered in such public schools." General Statutes § 10-15c (a). The statutes identify the educational interests of the state, including, "(4) the mandates in the CT Page 11322 general statutes pertaining to education within the jurisdiction of the State Board of Education be implemented." General Statutes § 10-4a(4). The statutes currently provide for local boards of education. "Each local or regional board of education shall maintain good public elementary and secondary schools, implement the educational interests of the state as defined in section 10-4a and provide such other educational activities as in its judgment will best serve the interests of the school district." General Statutes § 10-220 (a)(3). Each local or regional board of education is responsible to "give all the children of the school district as nearly equal advantages as may be practicable; shall provide . . . a safe school setting." General Statutes § 10-220 (a). "Each town shall through its board of education maintain the control of all the public schools within its limits." General Statutes § 10-240. "Each local or regional board of education shall furnish, by transportation or otherwise, school accommodations so that each child five years of age and over and under twenty-one years of age who is not a graduate of a high school or vocational school may attend public school . . ." General Statutes § 10-186 (a).
The named defendant is the Board of Education of the Town of Greenwich. It was created by the Town of Greenwich as mandated by the above enabling legislation. No mention of "Connecticut" is referred to in its creating documents.
(2) How the governing members of the entity are appointed. The state has no control or authority over the appointment of members of the Board of Education of the Town of Greenwich. They are elected by the town's residents pursuant to statute. General Statutes § 9-203.
(3) How the entity is funded. Funding can come from municipal, state or federal sources. This is a motion to strike. There is no evidence in this case indicating the allocation of funding that is obtained by the Board of Education of the Town of Greenwich from those sources. A statute mandates the school district's obligation to fund education: "Each school district shall finance at a reasonable level at least equal to the minimum expenditure requirement pursuant to the provisions of section10-262j an educational program designed to achieve this end." General Statutes § 10-4a(2). In Connecticut, funding education "remains primarily the function of the towns." Lostumbo v. Board of Education,
supra, 36 Conn. Sup. 295-96; Horton v. Meskill, 195 Conn. 24, 40 n. 17 (1985); Horton v. Meskill, supra, 172 Conn. 630-35 (Local property taxes are the principal source of revenue for local public schools.). "In Connecticut, the percentage contributions of the local, state and federal governments has been approximately 70 percent local, 20 to 25 percent state, and 5 percent or less federal." Id. 629. See also, "President Bush's Little Education Engine That Couldn't," Chester E. Finn Jr., CT Page 11323 Fonner Assistant Secretary of Education, Greenwich Time, July 20, 2001. Although local boards receive much of their funding from the state, "inferior government bodies do not share in Eleventh Amendment immunity simply because they receive state funds." Fay v. South Colonie CentralSchool District, 802 F.2d 21, 27 (2d Cir. 1986).
Greenwich pays its educational costs primarily from real property taxes on Greenwich real estate. Its municipal budget for education is a large percentage of its total annual budget. The state is required to furnish grants to the local boards of education, which is accomplished by the use of a per pupil formula based on each municipality's grand list. General Statutes § 10-261 et seq. The wealthier municipalities receive less state grants. General Statutes §§ 10-262f, 10-262h. There is a statutory grant by the state for transportation. General Statutes §§10-273a, 10-266m. General Statutes § 10-266m requires all 169 municipalities in Connecticut to be ranked in descending order and then issues grants per pupil based on that descending order. The ranking is based on each towns "adjusted equalized net grand list per capita" as defined in General Statutes §§ 10-261, 10-262f(1). As a result of that ranking the wealthier municipalities would be ranked at the top and the amount of grants would increase as each lower ranking was established. The top thirteen municipalities receive no transportation grant according to this formula. General Statutes § 10-266m(a)(1)(B). After June 30, 1997, the top seventeen municipalities receive no transportation grants. General Statutes § 10-266m(a)(1)(B) (ii). Greenwich is one of the wealthiest towns in Connecticut, if not the highest ranking under the "adjusted equalized net grand list per capita." It currently has the largest grand list of any town or city in Connecticut. Horton v.Meskill, supra, 172 Conn. 630-35. Greenwich is ranked in the top seventeen and receives no transportation grants from Connecticut under this formula. It was not until 1996 that Public Act 96-178 was passed, which added the following language to General Statutes § 10-266m: "Notwithstanding the provisions of subdivisions (1) and (2) of this section, for the fiscal year ending June 30, 1997, and for each fiscal year thereafter, no local or regional board of education shall receive a grant of less than one thousand dollars." This act became effective July 1, 1996. This lawsuit was returnable March 19, 1996 and was based on a motor vehicle collision that occurred on February 22, 1995 on a public highway in Connecticut. As of February 22, 1995, the Town of Greenwich was receiving no transportation grants from the State of Connecticut and the defendants have brought to the attention of this court no facts or law to the contrary.
(4) Whether the entity's function is traditionally one of local or state government. The law is mixed in this regard. Furnishing public education is a state function and duty. Cheshire v. McKenney, supra, CT Page 11324182 Conn. 257. This duty is placed upon the state by article eighth, § 1 of the Connecticut constitution and is delegated to local school boards by state statute. General Statutes § 10-220; Horton v.Meskill, supra, 172 Conn. 647. "There shall always be free public elementary and secondary schools in the state" Conn. Const., art. eighth, § 1. "There is no question but that local boards of education act as agencies of the state when they are fulfilling the statutory duties imposed upon them pursuant to constitutional mandate of article eighth, § 1." Cheshire v. McKenney, supra, 182 Conn. 258. "Local boards of education are also agents of the municipality that they serve." Id. "The state, in the exercise of its policy to maintain good public schools, has delegated important duties in that field to the towns." Id.
The Greenwich Board of Education is required by statute to provide transportation, not only to public school students but to parochial and private school students. General Statutes § 10-281. The state has mandated that "each board of education shall provide as a related service, safe and appropriate transportation as required to implement the individualized education program for each child requiring special education and related services." Regs., Conn. State Agencies §10-76d-19. Transportation is a traditional local concern. The Supreme Court rejected the argument that the Wilton Board of Education was engaged in a state function when it applied for municipal improvement zoning approval for the storage of school buses. Richards v. Planning Zoning Commission, 170 Conn. 318, 321, 326 (1976).
There is nothing in this file to indicate that the State of Connecticut controls the transportation of the plaintiff as a special education student. Federal law defines transportation for special education students to include, "(14) (iii) Specialized equipment (such as special or adapted buses, lifts, and ramps), if required to provide special transportation for a child with a disability." 34 C.F.R. Ch. III, Part 300.16(b) (14) (iii): Assistance to States for the Education of Children with Disabilities. There is no evidence in this case to indicate that a wheelchair, a special vehicle, or any other unique transportation was necessary for the plaintiff other than providing him with a seat in a standard motor vehicle with a proper seat belt device. No transportation aide was needed by the plaintiff Regs., Conn. State Agencies §10-76d-19 (d). There is no evidence indicating that the transportation of the plaintiff was other than routine. The only allegation of a violation of an unsafe vehicle is failure to assure adequate seat restraints. Regs., Conn. State Agencies, §§ 14-275c-31 (c) and 14-275c-35.
The state has mandated transportation for special education students by regulation but that duty has been assigned to the local board of education. Regs., Conn. State Agencies § 10-76d-19. There is no state CT Page 11325 mandate for regular students since such a decision is traditionally a local board of education concern. The board provides "for the transportation of children whenever transportation is reasonable or desirable. . . ." General Statutes § 10-220 (a). The local board of education has the statutory obligation to indemnify and save harmless its employees for negligence claims. General Statutes § 10-235 (a).
(5) Whether the state has veto power over the entity's actions. There is no state statute holding that Connecticut has veto power over the providing of transportation by a municipality. The defendants have offered no such authority and this court has no such evidence to so indicate; nor does the examination of the statutes reveal any such authority. The issues in this case do not involve
(6) Whether the entity's obligations are binding upon the state. Connecticut is not a defendant in this case. Connecticut has no obligation to indemnify the Greenwich Board of Education. There is no authority shown to this court that the fiscal resources of the state will be in any way impacted by a plaintiffs' verdict in this case. This court knows of no legal theory on which the municipality has the authority to obtain any funds from the state for indemnification or that the state may be obligated to pay for and hold harmless either the Town of Greenwich or the Board of Education of the Town of Greenwich for any liability arising out of an ordinary automobile accident. No such statute or authority has been brought to this court's attention.
The court finds that all six factors of Lake Country Estates argue against sovereign immunity. In the event that those factors were evenly balanced or were pointing in different directions, the court would have considered the next two factors: (1) Would the state treasury be exposed to risk? and (2) Would the denial of sovereign immunity violate the dignity and threaten the integrity of the state? This court has already discussed the issue as to the state's fisc. There is no hold harmless or indemnity obligation by the state and all funds to be paid to the plaintiffs for damages are to be paid from either insurance obtained by premiums duly paid by the Town of Greenwich or municipal funds raised from its own assets. The state's fisc is not at risk. The State of Connecticut is not a necessary or integral party in this case and, thus, could not be joined under General Statutes §§ 52-102, 52-102a, 52-102b, or 52-107. The named governmental defendants in this case are the Town of Greenwich and the Board of Education of the Town of Greenwich and liability against them would not affect the integrity or the dignity of the State of Connecticut. Therefore, this court concludes that all eight of these factors set forth in both Lake Country Estates and Feeney argue in favor of no sovereign immunity. CT Page 11326
This result is in accord with a recent Connecticut federal case. "Although the state board of education is charged with general supervision and control of the educational interests of the state, Conn. Gen. Stat. § 10-4 (a) (1989), being a steward of state education policy does not make the school district an alter ego of the state." RosaR. v. Connelly, 889 F.2d 435, 437 (2d Cir. 1989). Instead of appealing their son's maximum 180 day expulsion from the Bridgeport Public Schools for bringing a loaded gun to school, the plaintiffs filed suit in federal district court. Summary judgment on eleventh amendment grounds was granted in favor of the school system and was reversed on appeal by the Second Circuit Court of Appeals. The arm of the state determination was the sole issue. "This is true particularly in Connecticut, where actual implementation of the goals and maintenance of the public schools are the responsibility of local boards." Rosa R. v. Connelly, supra, 889 F.2d 437.Rosa R. v. Connelly concluded that sovereign immunity was not applicable after a making a inquiry into the Connecticut education system. "Such an inquiry into Connecticut's education system supports the conclusion that local school boards are municipal bodies for purposes of theEleventh Amendment and thus subject to suit in federal court." Id. A similar result was reached in Barry v. New Britain Board of Education, Docket No. 3: 98 CV 1362 (D.Conn. March 19, 2001) (Squatrito, J.).
A number of cases have analyzed the functions of a board of education in non-school bus situations holding that sovereign immunity does not apply since the board of education was functioning in a municipal capacity. Cahill v. Board of Education, supra, 187 Conn. 102 (holding that sovereign immunity does not protect the board in a contract action between itself and a teacher since such an action would neither control the activities of the state nor subject it to liability); Lostumbo v.Board of Education, supra, 36 Conn. Sup. 295-96 (holding that the board was not protected by sovereign immunity where plaintiff was allegedly injured from a fall on an icy sidewalk on school property since the board is not an agent of the state where the alleged tortious conduct of the board would have no bearing on the state's activities); Stultz v.Larosa, Superior Court, judicial district of Tolland at Rockville, Docket No. CV94-56704 (August 8, 1997, Maczak, J.) (1977 Ct. Sup. 8203) (holding that governmental immunity, and not sovereign immunity, was the board's proper defense where plaintiff was allegedly injured during an assault on school property since the board was acting on behalf of the municipality in its function to maintain control over the public schools); O'Farrellv. Claude Chester Elementary School, Superior Court, judicial district of New London, Docket No. 526692 (August 16, 1995, Hendel, J.) (1995 Ct. Sup. 8807) (holding that sovereign immunity was inapplicable where plaintiff was allegedly injured during recess since, in performing the duties of proper supervision and training, the board acts as an agent of the town, rather than the state); Rosen v. Reale, Superior Court, CT Page 11327 judicial district of New London, Docket No. 527510 (January 13, 1994, Hurley, J.) (9 C.S.C.R. 301) (1994 Ct. Sup. 301) (holding that sovereign immunity did not shield the board and superintendent from liability where the plaintiff was allegedly injured during an altercation with another student on the school playground since the defendants do not act as state agents when furthering their duty to maintain control over the schools).
Trial courts have held in school bus collision personal injury cases that the board is the agent of the town in maintaining school buses and, thus, is not entitled to sovereign immunity. Belanger v. Glastonbury,
Superior Court, judicial district of Hartford, Docket No. CV90 380529 (April 22, 1991, Freed, J.) (1991 Ct. Sup. 3591); Nunes v. Blake BusService, Inc., Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. CV90 030469S (January 4, 1991, Mancini, J.) (3 Conn. L. Rptr. 149) (1991 Ct. Sup. 379).
This case involves a routine motor vehicle claim by a passenger against the owner, operator, and their agents for negligence in the operation of a motor vehicle. The State of Connecticut is not a party and no one has indicated that the state may become a party. Imposing liability on the Town of Greenwich and the Board of Education of the Town of Greenwich, Kelly Transportation Company and Joseph P. Kurien as its agents or employees would not operate to "control the activities of the state or subject it to liability." Cahill v. Board of Education, supra,187 Conn. 102. The Motion to Strike must be granted on this ground alone.
II. Public Act 00-133, amending General Statutes § 52-557, effective October 1, 2000 is retroactive.
Effective October 1, 2000 Public Act 00-133 amended General Statutes § 52-557 with the following language:
 In any action brought by any person for personal injuries received while being transported to or from school in a vehicle owned, leased or hired by, or operated under contract with, any town, school district or other municipality, it shall be no defense that such transportation is in the line of governmental duty or is mandated by the state. In any such action brought against any town, school district or other municipality, the defense of sovereign immunity shall not be available and it shall be no defense that the transportation was being provided by an independent contractor.
CT Page 11328 (Note: The underlined language was added by P.A. 00-133 to General Statutes § 52-557)
According to the legislative history, Public Act 00-133 was passed in response to a recent state Supreme Court decision. This court has not been able to locate such a case. In a physical assault case on a school bus, a trial judge did apply sovereign immunity against the plaintiff, a special education student. The claim of negligence involved transportation aides appointed to assist the plaintiff included as part of his IEP. Regs., Conn. State Agencies § 10-70-19 (d) ("A transportation aide shall be assigned to each vehicle transporting a child whose individualized education program specifies the need for such an aide."). That case did not involve the operation of a motor vehicle. Crandall v.Groton Board of Education, Superior Court, judicial district of New London at Norwich, Docket No. 102935 (November 26, 1993, Hendel, J.) (9 C.S.C.R. 34) (1993 Ct. Sup. 10229). Crandall was not appealed. Two other cases were referred to in the General Assembly website and will be discussed in this opinion.
Public Act 00-133 was apparently pending in the Connecticut General Assembly while the instant Motion to Strike was before this court. Public Act 00-173 is effective October 1, 2000. Thus, it does not appear thatP.A. 00-133 was passed to affect this pending case, thereby rendering it unconstitutional as ex post facto. Gohel v. Allstate Ins. Co.,61 Conn. App. 806, 820 (2001); State v. Cobb, 256 Conn. 285, 436 (1999). It does not appear that this Public Act was passed specifically to assist the plaintiffs. If the public act was passed to assist the plaintiffs in this case it would be void as "an exclusive public emolument." "No man or set of men are entitled to exclusive public emoluments or privileges from the community." Conn. Const., art. first, § 1; Commissioner of PublicWorks v. Middletown, 53 Conn. App. 438, 450 (1999); State Ex rel. Levinev. Lee, 21 Conn. Sup. 116, 122 (1958); Garett v. Connecticut,20 Conn. Sup. 496, 501 (1958). Therefore, the only remaining issue is whether Public Act 00-133 is to be applied retroactively to this case.
Whether to apply a statute retroactively or prospectively depends upon the intent of the legislature in enacting the statute. State v. Magnano,204 Conn. 259, 277 (1987). "In determining the intended effect of a later enactment on earlier legislation, two questions must be asked. First, was the act intended to clarify existing law or to change it? Second, if the act was intended to make a change, was the change intended to operate retroactively?"
 Whether to apply [a statute] retroactively or prospectively depends upon the intent of the legislature in enacting the statute . . . In order to CT Page 11329 determine the legislative intent, we utilize well established rules of statutory construction. Our point of departure is General Statute § 55-3, which states: No provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have retrospective effect. The obligations referred to in the statute are those of substantive law . . . Thus, we have uniformly interpreted § 55-3 as a rule of presumed legislative intent that statutes affecting substantive rights shall apply prospectively only . . . This presumption in favor of prospective applicability, however, may be rebutted when the legislature clearly and unequivocally expresses its intent that the legislation shall apply retrospectively . . . Where an amendment is intended to clarify the original intent of an earlier statute, it necessarily has retroactive effect . . . We generally look to the statutory language and the pertinent legislative history to ascertain whether the legislature intended that the amendment be given retrospective effect. (Emphasis in original; internal quotation marks omitted.) In re Eden F., 250 Conn. 674, 695-96, 741 A.2d 873 (1999).
Oxford Tire Supply v. Commissioner, 253 Conn. 683, 691-92 (2000).
"An amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act . . . Therefore, whether the legislature intended to change or merely clarify existing law is critical to our decision on this issue." (Citations omitted; emphasis in original; internal quotation marks omitted.) Department of Judicial Services v. Saunders, 247 Conn. 686,701-02 (1999); Quarry Knoll II Corp. v. Planning Zoning Commission,256 Conn. 674, 722 (2001).
The search for legislative intent begins with the words of the statute itself. Peabody N.E., Inc. v. Department of Transportation, 250 Conn. 105,122 (1999). In this case, the language of this statute is not ambiguous.State v. Parra, 251 Conn. 617, 628 (1999). It refers to "any action brought by any person for personal "injuries" and "In any such action brought against any town, school district or other municipality." According to the legislative history on P.A. 00-133, General Statutes § 52-557 was passed in 1929. The language was all inclusive: all students riding in the school bus are covered. During the debate onP.A. 00-133 it was made clear that the legislature's original intent was not CT Page 11330 to create any exceptions. The legislative intent of P.A. 00-133 was that it clarified the prior statute that sovereign immunity did not apply under these circumstances. Oxford Tire Supply, Inc. v. Commissioner,
supra, 253 Conn. 693 (2000).
The legislative history is revealing. "The pertinent legislative history, however, contains compelling evidence that the legislative intended to clarify, rather than to change . . ." Oxford Tire Supply,Inc. v. Commissioner of Revenue Services, supra, 253 Conn. 692. "Another factor [that] we have deemed to be significant in determining the clarifying character of legislation is that the legislation was enacted in direct response to a judicial decision that the legislature deemed incorrect." Id. 693.
Senator Donald E. Williams Jr.: May 1, 2000
Thank you, Madam President. In 1929, the General Statutes were altered by this Legislature which permitted a right of action against a municipality if any school child was injured on a school bus. And that was the law of the land in Connecticut up until recently when a State Supreme Court opinion carved out an exception for transportation of special education students claiming that because the transportation mandated by the state that there was sovereign immunity and that special education students had no such right of action against a municipality as all other school children riding on school buses.
This changes the law so that it conforms with the original intent of the Legislature back in 1929 and that all school children riding school buses are so protected and special education children are not singled out.
Rep. Michael P. Lawlor: April 24, 2000
Thank you Madam Speaker: Since 1929 the Connecticut law has been that in the event that school children were injured while being transported by a school bus, the sovereign immunity which is normally is granted to the state or which is claimed by the state, would not be extended to those situations notwithstanding the fact that education is a state mandate.
Recently Madam Speaker, there was a decision in our State Supreme Court that made an exception to that existing 1929 statute. The court reasoned that since special education services were specifically mandated by the state then the state's sovereign immunity would apply to a town, which was providing that transportation.
In that particular case Madam Speaker a student was sexually assaulted CT Page 11331 by other students on the bus owing to the negligence of the bus operator who was a town employee. Madam Speaker, I think it's fair to say that everyone's intent in 1929 and since then was that sovereign immunity would not apply to the provision of school bus services. This simply conforms the existing law to what the intent was assumed to have been and would in effect overrule the Supreme Court decision.
It makes it clear that sovereign immunity cannot be claimed even in special education transportation situations. I would urge passage.
Rep. Michael P. Lawlor: April 24, 2000
Thank you Madam Speaker: I think everyone assumed that towns that provide school bus transportation were not, did not have the immunity that apparently the Supreme Court disagreed on. That is the case with all other forms of school bus transportation, all of which is state mandated. So I don't think this expands it, I think it just clarifies what everyone assumed the rule had been. Through you Madam Speaker.
Rep. Lawrence G. Miller: April 24, 2000
Representative Lawlor, several years ago . . . or quite a few years ago . . . we used to send a couple of the special ed children out of state. How would that affect our town with regard to law suits if something happens in the school that let's say in Massachusetts where they're transported and they get injured? Through you Madam Speaker.
Rep. Michael P. Lawlor:
Thank you Madam Speaker, if the town was negligent they would be liable. Through you Madam Speaker.
Rep Michael P. Lawlor: April 24, 2000
Keep in mind this has been the law since 1929 and recently the Supreme Court made a small exception for special ed.
No one has complained about the law since then. It was long before people worried about mandates and things like that. I think everyone assumed this was the law already, this would just make it clear that it continues to be the law. Through you Madam Speaker.
The purpose of P.A. 00-133 was to confirm the initial legislative intent of General Statutes § 52-557 and make clear that the defense of sovereign immunity is not available in a special education transportation case. Allard v. Liberty Oil Equipment Co., 253 Conn. 787, CT Page 11332 801 (2000). As such P.A. 00-133 is retroactive.
The statute did not contain specific retroactive language such as, "This act shall take effect from its passage and shall be applicable to any civil action pending or filed on or after August 11, 1998." Allardv. Liberty Oil Equipment Co., supra, 253 Conn. 801. Clarification of the existing law applies to pending cases. State v. Ryerson, 201 Conn. 333,339 (1986). "It is true that judgments that are not by their terms limited to prospective application are presumed to apply retroactively . . . This general rule applies to cases that are pending." Morane v.Waterbury, 244 Conn. 1, 10-11 (1998).
The use in the above legislative history of the following phrases: "It makes it clear"; "I don't think this expands it"; "I think it just clarifies what everyone assumed the rule had been"; and "This would just make it clear that it continues to be the law," is substantial evidence that P.A. 00-133, as amending General Statutes § 52-557, was intended to clarify rather than change the existing law. Quarry Knoll II Corp v.Planning Zoning Commission, supra, 256 Conn. 723-726.
Although not customarily considered part of the legislative history the General Assembly website contains further information on P.A. 00-133. See http://www.cga.state.ct.us. In a document entitled "House of Representatives, March 23, 2000," an OLR Bill analysis contained the following:
"An Act Concerning The Protection of Children Being Transported to School
SUMMARY:
This bill allows people, including special education students, to sue school boards, towns, or municipalities when they are injured going to or from school in state-mandated transportation. It preserves the state's immunity from suit.
Because state law mandates that local governments provide transportation for special education students, it appears that these students currently cannot sue their city, town, or local school board for their injuries. But those injured while being taken to or from regular education programs can.
Under the bill as under current law, any person claimed to be responsible for injuries can be sued, and, in most circumstances, the local body that provided the service must pay damages for (indemnify) its negligent employees' acts. CT Page 11333
BACKGROUND
Sovereign Immunity
The doctrine of sovereign immunity protects states from being sued. It generally does not protect towns and local governments. But our Supreme Court has held that school boards implementing state-mandated special education programs are acting as agents of the state, and are thus immune from suit (Cheshire v. McKenney, 182 Conn. 253, 258 (1980)). And several trial courts have ruled that sovereign immunity bars special education students' suits against school boards for injuries occurring in vehicles the board provided to take them to school. (Todd M. v. Richard L.,44 Conn. Sup. 527 (1995)."
The document then lists the Judiciary Committee vote of 37 Yea and 2 Nay. The house passed the bill on April 24, 2000, the Senate on May 1, 2000 and the Governor signed it on May 26, 2000. It is effective October 1, 2000.
Neither Cheshire v. McKenney, 182 Conn. 253, 258 (1980) nor Todd M. v.Richard L., 44 Conn. Sup. 527 (1995) were specifically identified in the reported debates of the General Assembly. Neither case involved a special education student injured in a motor vehicle collision while being transported by a school bus.
Cheshire v. McKenney, supra, 182 Conn. 253, involved a quo warranto action brought concerning a Cheshire teacher who wished to simultaneously retain an elected position as a councilman at-large in the town of Cheshire along with his current teaching position. The court held that "furnishing of an education for the public is a state function and duty." Id. 257. "There is no question but that local boards of education act as agencies of the state when they are fulfilling the statutory duties imposed upon them pursuant to the constitutional mandate of article eighth, § 1. . . . Local boards of education are also agents of the municipality that they serve, however. This court has recognized that the state, in the exercise of its policy to maintain good public schools, has delegated important duties in that field to the town." Id 258. Cheshirev. McKenney broke no new ground and did not discuss special education, school buses or transportation.
Todd M. v. Richard L., 44 Conn. Sup. 527 (1995) involved a civil suit for physical and sexual assault while the minor special education student plaintiff, was being transported to school on a school bus. The defendants were the driver and officials of the school system responsible for providing, selecting or conducting all or part of the plaintiff's transportation. There was no negligent operation of a school bus CT Page 11334 alleged. The abuse was administered only by other students, not the driver or other officials of the school system. Multiple special defenses were filed including sovereign immunity and the case reported the trial judge's decision on the Motion to Strike addressed to the various special defenses. The trial court held: "Since the provision of special education services, which specifically include transportation as a part of an individualized education plan, is carried out by a board of education pursuant to a specific educational mandate of the state, the doctrine of sovereign immunity applies and bars the plaintiff's claims of negligence in the present case." Id. 541.
Neither Cheshire nor Todd M. involved a child injured in a motor vehicle accident. Neither case discussed the waiver of sovereign immunity on motor vehicle claims under General Statutes §§ 52-556 and 52-557
nor the common carrier standards applicable to the operation of school buses under General Statutes § 52-557c.
Todd M. v. Richard L. was a trial court decision decided by a written opinion dated July 14, 1995. The decision was submitted to the Commission on Official Legal Publications and later found appropriate for publication. It was published in the Connecticut Supplement at44 Conn. Sup. 527. The citation has the date of 1995. In actuality, the publication occurred in 1997. It was first published in the Connecticut Law Journal on May 20, 1997. On April 24, 2000, Representative Michael P. Lawlor outlined the case upon which P.A. 00-133 was based as follows: "Recently Madam Speaker, there was a decision in our State Supreme Court that made an exception to that existing 1929 statute . . . In that particular case Madam Speaker a student was sexually assaulted by other students on the bus owing to the negligence of the bus operator who was a town employee." Although Todd M. v. Richard L. was not a Supreme Court case, it was the case that was based on the facts outlined by Representative Lawlor. Todd M. v. Richard L. was also referred to as the trial court genesis of P.A. 00-133 in the General Assembly's website.
Another "factor we have deemed to be significant in determining the clarifying character of legislation is that the legislation was enacted in direct response to a judicial decision that the legislature deemed incorrect." Dept. of Social Services v. Saunders, supra, 247 Conn. 702;Toise v. Rowe, 243 Conn. 623, 628-29 (1998) (reasonable to conclude that legislature's prompt and unambiguous response to controversy regarding interpretation of original act evidences legislative intent to clarify meaning of that act); Edelstein v. Dept. of Public Health AddictionServices, 240 Conn. 658, 668-69 (1997) (same); State v. State Employees'Review Board, 239 Conn. 638, 651 (1997) (same); Quarry Knoll II Corp. v.Planning Zoning Commission, supra, 256 Conn. 726 (same). CT Page 11335
The legislature meets in a full session every two years. The passage in 2000 of a public act clarifying a 1995 trial court decision not generally available until May 20, 1997 is in direct response to that trial court's decision. The language of the legislative history so states and this fact is confirmed by the General Assembly's website. P.A. 00-133 appears to be a "classic reaction to a judicial interpretation that was deemed inappropriate." State v. Magnano, supra, 204 Conn. 283; Quarry Knoll IICorp. v. Planning Zoning Commission, supra, 256 Conn. 728.
The defendants in this case argue that, "The statutes mandating such a program and requiring towns to transport students to such a program (special education) did not come about until 1967." Supplemental Memorandum of Town of Greenwich and Greenwich Board of Education, June 12, 2000, page 9. They argue that the legislature is presumed to know of prior statutes and the effect of the new law on the existing statutory scheme. This court has found the following statutes discussing school transportation: General Statutes § 10-281 (In 1971, made town's provision of transportation to nonprofit private schools mandatory, rather than optional when majority of students come from that town); General Statutes § 10-280a (Optional to provide transportation to a student attending a nonprofit private school outside the school district where the student resides); General Statutes § 10-76d(e)(1) ("Any local or regional board of education which provides special education pursuant to any mandates in this section shall provide transportation to and from . . . the residence of a child . . ." originally approved in P.A. 67-627); General Statutes 10-273a ("Any town transporting children to and from any public elementary school, including kindergartens, or to and from any public secondary school within said town shall be reimbursed for the cost of pupil transportation annually in accordance with the provisions of section 10-97 and 10-266 in." Originally approved in P.A. 61-525, §10-97 applies to vocational schools. In accordance with § 10-266m, Greenwich received no transportation grants from the state from 1985 until June 30, 1997, when Greenwich became entitled to receive a $1000 year grant in accordance with General Statutes § 10-266m (a)(3)); General Statutes § 10-220 (a)(3) (For regular students, local or regional boards of education "shall make such provisions as will enable each child of school age, residing in the district, to attend some public day school for the period required by law and provide for the transportation of children whenever transportation is reasonable and desirable . . ."). None of these statutes require that a specific mode of transportation must be provided by the towns as mandated by the state for all special education students regardless of the fact that their disability does not require such unique transportation. The defendants' arguments are not persuasive that special education transportation requirements as mandates are state actions that impact sovereign immunity. CT Page 11336
It is [t]he general rule . . . that when a legislative act is intended to clarify existing law it necessarily has retroactive effect." (Internal quotations marks omitted.) Reid v. Zoning Board of Appeals, 235 Conn. 850,859 n. 5 (1996); State v. Magnano, supra, 204 Conn. 284; Green v. GeneralDynamics Corp., 245 Conn. 66, 78 (1998). "An amendment that is intended to clarify the original intent of an earlier statute necessarily has retroactive effect." Connecticut Bank v. Giacomi, 242 Conn. 17, 40
(1997). P.A. 00-133 intended to clarify the earlier statute, General Statutes § 52-557 and is retroactive. The Motion to Strike must be granted on this ground alone.
III. General Statutes § 52-556 abrogates sovereign immunity under the facts of this case.
Sec. 52-556. Actions for injuries caused by motor vehicles owned by the state.
 Any person injured in person or property through the negligence of any state official or employee when operating a motor vehicle owned and insured by the state against personal injuries or property damage shall have a right of action against the state to recover damages for such injury.
This statute waives the state's sovereign immunity for motor vehicle claims. White v. Burns, supra, 213 Conn. 312. The elements of this statute are: (1) a person must be injured, (2) as a result of negligence, (3) of any state official or employee, (4) when that state official or employee is operating a motor vehicle, (5) the motor vehicle is owned by the state, and (6) the motor vehicle is insured by the state.
 Our inquiry begins with the language of § 52-556, which has remained substantially unchanged since the statute first was enacted in 1927. See Public Acts 1927, c. 209. Section 52-556 provides in relevant part that "[a]ny person injured . . . through the negligence of any state official or employee when operating a motor vehicle owned and insured by the state . . . shall have a right of action against the state . . ." (Emphasis added.) With the enactment of § 52-556, therefore, the state expressly waived sovereign immunity in motor vehicle negligence actions; Capers v. Lee, 239 Conn. 265, 273, 684 A.2d 696
(1996); and specifically consented to suits based on CT Page 11337 `negligence.' The legislature's use of the term "negligence' in § 52-556 manifests the obvious intention of the legislature to consent to suit against the state based on the breach of a common-law duty of care in the operation of state owned and insured vehicles by state employees and officials. See Sullivan v. State, 189 Conn. 550, 555 n. 7, 457 A.2d 304
(1983) (§ 52-556 permits recovery against state on theory of vicarious liability for certain negligent acts by its agents, a common-law liability borne by private employers') Because the language of § 52-556
expressly waives the state's immunity from suit based on common-law negligence, it appears that the legislature intended § 52-566 to incorporate the principles governing existing common-law negligence actions, and that the statute was not intended to create a separate statutory action to which different principles of liability and damages would apply.
Babes v. Bennett, 247 Conn. 256, 263-64 (1998).
"[T]he process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case . . . In seeking to determine that meaning, we look to the words of the statute itself to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . It is the duty of the court to interpret statutes as they are written . . . and not by construction read into statutes provisions which are not clearly stated." Brennan v. Fairfield, 58 Conn. App. 191,197 (2000). Brennan involved the issue of sovereign immunity.
"[S]tatutory language is to be given its plain and ordinary meaning. A cardinal rule of statutory construction is that where the words of a statute are plain and unambiguous the intent of the [drafters] in enacting the statute is to be derived from the words used. Where the court is provided with a clearly written rule, it need look no further for interpretive guidance. Courts may not by construction supply omissions in a statute, or add exceptions merely because it appears to them that good reasons exist for adding them." (Citations omitted.) Id. 197.
In this case, the State of Connecticut is not a party and has not been requested by any party to be joined as a party. The complaint establishes CT Page 11338 elements (1) and (2) in that Eytan Nisinzweig was injured as a result of the negligent operation of a motor vehicle. The only allegations of elements (3), (4), (5) and (6) are contained in the two special defenses filed by the three additional defendants. This court must construe the allegations of a pleading in the manner most favorable to sustain its legal sufficiency. Doe v. Yale University, supra, 252 Conn. 667. The plaintiffs do not concede that the State of Connecticut is in any way involved in this case and, thus, the plaintiffs' complaint contains no factual references. This court, therefore, must assume that the facts alleged in the special defenses are trite for purposes of the Motion to Strike. The defendants, Town of Greenwich and the Board of Education of the Town of Greenwich, in their special defense allege that Eytan Nisinzweig was being transported to an educational program developed for him as mandated by state law. Accordingly, at all applicable times, the transportation of Eytan Nisinzweig to school involved duties for which Greenwich was responsible as an agent of the State of Connecticut." Kelly Transportation Company's special defense alleges that it "was employed as an agent, servant or employee of the Town of Greenwich and/or the Town of Greenwich Board of Education. Thus, the doctrine of sovereign immunity is a bar to the cause of this action." Kelly, in effect, adopted the special defenses of Greenwich. The Greenwich special defense has conceded the operation of the motor vehicle was in an agency capacity for the State of Connecticut, satisfying elements (3) and (4).
Element (5) is that the vehicle must be owned by the state. Although the State of Connecticut is not a named defendant and the motor vehicle was not registered to the State of Connecticut, the three moving defendants are claiming that there is sovereign immunity since they were acting as an agent for the state in a state function providing transportation for the minor plaintiff. Sovereign immunity can be waived by appropriate legislative action. Baker v. Ives, supra, 162 Conn. 298;Brennan v. Fairfield, supra, 58 Conn. App. 195; Berger, LehmanAssociates, Inc. v. State, supra, 178 Conn. 356. If the special education status of the plaintiff impacts the State by reason of agency then the State of Connecticut is the "owner" of the motor vehicle and thus is liable by statute, General Statutes § 52-556. The pleadings allege such an agency relationship.
"The word owner has no fixed meaning but must be interpreted in its context and according to the circumstances in which it is used. . . . Our Supreme Court stated that the term "owner' is one of general application and includes one having an interest other than the full legal and beneficial title. . . . The word owner is one of flexible meaning, and it varies from an absolute proprietary interest to a mere possessory right . . . It is not a technical term and, thus, is not confined to a person who has the absolute right in a chattel, but also applies to a person who CT Page 11339 has possession and control and control thereof." Bauer v. Pounds,61 Conn. App. 29, 43 (2000); Platcow v. Yasuda Fire Marine Ins. Co.,59 Conn. App. 47, 54 (2000) (Owner of a motor vehicle may be its lessee); State v. Marsala, 59 Conn. App. 135, 140 (2000) (Towing company with a recorded lien for towing and storage charges on the automobile registered to another held to be owner); Hope v. Cavallo, 163 Conn. 576,580-81 (1972) (The State of Connecticut could be found to be the "owner" under General Statutes § 52-556 even though the motor vehicle was owned by the federal government). Hope v. Cavallo was a routine highway collision, just like this case. The vehicle was operated on the public highways of Connecticut and was used in conjunction with the duties to provide Air National Guard services to citizens of Connecticut. "The word `owner' is found in numerous statutes and has no commonly approved usage or fixed meaning, but must be interpreted in its context and according to the circumstances in which it is used." Hope v. Cavallo, supra,163 Conn. 580. "The word owner is one of flexible meaning, and it varies, from an absolute proprietary interest to a mere possessory right. It is not a technical term and, thus, is not confined to a person who has the absolute right in a chattel, but also applies to a person who has possession and control thereof." Id. 580-81. This court, therefore, finds under the allegations of the two special defenses and Hope v.Cavallo, the State of Connecticut is the "owner" of the motor vehicle in which the plaintiff occupied. Element (5) is satisfied.
Element (6) is satisfied because insurance statutes permit governmental agencies to be self-insured. General Statutes §§ 14-129, 38a-371 (c). "Any person in whose name more than twenty-five motor vehicles are registered may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the Commissioner." General Statutes § 14-129. "A municipality may provide the security required under said sections by filing with the commissioner a notice that it is a self-insurer." Regs., Conn. State Agencies § 38a-334-6; General Statutes § 380-371 (c); Boynton v. New Haven, 63 Conn. App. 815, 816 (2001). All department heads are indemnified for negligence by statute. General Statutes §4-16a. This rule covers the State Board of Education. General Statute § 4-5. The State of Connecticut is not obligated to provide proof of financial responsibility in regard to unpaid judgments arising out of motor vehicle accidents. General Statutes § 14-112. Self insurance is an acceptable substitute to proof of insurance. Regs., Conn. State Agencies § 14-36f-9 (f).
All six elements of the sovereign immunity statute, General Statutes § 52-556, are met by the pleadings and the law. Under the facts of this case, General Statutes § 52-556 waives any claims of sovereign immunity raised by any of the three additional defendants in their special defenses, assuming that the facts alleged therein are true. The CT Page 11340 Motion to Strike must be granted on this ground alone.
IV. General Statutes 52-557, prior to its amendment by P.A. 00-133, permits the plaintiffs to recover under the facts of this case.
Prior to P.A. 00-133 the statute reads:
 General Statutes § 52-557. Injury to children being transported to school.
 In any action brought by any person for personal injuries received while being transported to or from school in a vehicle owned, leased or hired by, or operated under contract with, any town, school district or other municipality, it shall be no defense that such transportation is in the line of governmental duty. In any such action brought against any town, school district or other municipality, it shall be no defense that the transportation was being provided by an independent contractor.
This statute was intended to waive sovereign immunity in claims by school children transported to school in any vehicle used by the town or school district for that purpose. This is exactly what the plaintiffs have alleged. This is the 1929 statute referred in the legislative history of P.A. 00-133. The statute meets the recently adopted federal test that the legislature must provide a clear legislative statement of its intent to abrogate eleventh amendment immunity. Seminole Tribe ofFlorida v. Florida, 517 U.S. 44, 68 (1996).
General Statutes § 52-557 was enacted in 1929 by Public Acts Ch. 38. The statute has never been amended until P.A. 00-133. The subject of school bus liability was not visited again by the legislature until 1965, when the current General Statutes § 52-557c was adopted.
 The standard of care applicable to the owners and operators of any school bus, as defined in section 14-275, or of any motor vehicle registered as a service bus transporting children to and from school or school activities, private or public camps or any other activities concerning the transportation of groups of children shall be the same as the standard of care applicable to common carriers of passengers for hire.
No exemptions from liability were mentioned either in 1965 or later when the special education statutes were enacted. The legislature did not CT Page 11341 amend either General Statutes §§ 52-557 or 52-557c at the time it provided that transportation could be included in IEP's of special education students.
If the defendant's special defenses are valid as exceptions to General Statutes §§ 52-556 and 52-557c, special education students will be carved out and treated differently. Assume there are ten public school students in a regular school bus being driven to school and all ten are injured in a collision caused by the negligence of the school bus driver. One of these students is a special education student. If the defendants are correct, then out of all the passenger students injured in this school bus traffic collision, there can only be recovery for those students not receiving special education. This is a bizarre result. "The canon of statutory construction which holds a statute should not be strained to achieve of a bizarre result is applicable in this instance."Rocque v. Northeast Utilities Services Co., 254 Conn. 78, 86 (2000). "It is a rule of statutory construction that those who promulgate statutes or rules do not intend to promulgate statutes or rules that lead to absurd or bizarre results." Commission on Human Rights Opportunities v.Sullivan Assn., 250 Conn. 763, 778 (1999). The phrase "governmental duty" in General Statutes § 52-557 should not be read narrowly. Spitzer v.Waterbury, 113 Conn. 84, 87 (1931). It should cover all forms of immunity for governmental agencies including sovereign immunity. This interpretation is consistent with the legislative intent already found by this court concerning P.A. 00-133, that it only clarified what was the consistent legislative intent since 1929. It is also consistent with the limited information concerning the legislative intent in 1929 of General Statutes § 52-577 when the Statement of Purpose stated: "An Act concerning Right of Action against Municipalities for Transportation of School Children, providing that passengers shall have a right of action against municipality where bus or other vehicle is in accident." The Motion to Strike must be granted on this ground alone.
V. The defendants may be estopped from raising a sovereign immunity defense.
Eytan Nisinzweig was receiving special education provided by the Greenwich Board of Education as a public school student. He was injured during the school day while in the care, custody and control of the Greenwich Board of Education, its agents or employees. This court has been supplied with no other facts. His special education record was not before this court nor contained within the pleadings.
Special education is mandated by state statute and regulation. "Special education means specially designed instruction developed in accordance with the regulations of the commissioner, subject to approval by the CT Page 11342 State Board of Education offered at no cost to parents or guardians, to meet the unique needs of a child with a disability, including instruction conducted in the classroom, in the home, in hospitals and institutions, and in other settings and instruction in physical education and special classes, program or services, including related services designed to meet the educational needs of exceptional children." General Statutes §10-76a(4). The local board of education has a duty to provide such special education. "Each local or regional board of education shall provide the professional services requisite to identification of school-age children requiring special education, identity each such child within its jurisdiction, determine the eligibility of such children for special education . . . prescribe suitable educational programs for eligible children, maintain a record thereof, and make such reports as the commissioner may require." General Statutes § 10-76d(a)(1).
The first step in providing special education services to a public school student is the organization of a Planning and Placement Team (PPT). The PPT is mandated by statute, General Statutes § 10-76d(a)(2), and is implemented by regulation, Regs., Conn. State Agencies §10-76d-10. "The responsible local or regional board of education shall inform the parent or guardian of such child or surrogate parent or, in the case of a pupil who is an emancipated minor or eighteen years of age or older, the pupil of the laws relating to special education and the rights of such parent, guardian, surrogate parent or pupil under such laws and the regulations adopted by the State Board of Education relating to special education." General Statutes § 10-76d (a)(8). The PPT consists of representatives of the local board of education, teachers, administrators of the pupil's school, school counselors, school personnel, the pupil, and the parents. It can also include experts and advisors requested to join by either the school or parents. The PPT must have a meeting to determine eligibility and conduct an evaluation. Regs., Conn. State Agencies §§ 10-76d-10 (b), (c) and (d).
If the pupil is determined to be eligible for special education, the PPT must formulate, develop and put into effect an Individual Education Program (IEP). The IEP is revised periodically, but not less than annually. Regs., Conn. State Agencies § 10-76d-11 (b). "Each board of education shall provide each child requiring special education and related services with a program appropriate to the child's needs as set forth in the child's individualized education program." Regs., Conn. State Agencies § 10-76d-14. Among the components of the IEP is transportation. "A statement of specific educational services needed by the child, including a description of special education and related services which are needed to meet the needs of the child. Such description shall include the type of transportation necessary and a statement of the recommended instructional settings." Regs., Conn. State CT Page 11343 Agencies § 10-76d-11 (c)(4). There appears to be no statutory mandate that all special education students must receive an IEP that includes special or individualized transportation requirements. For example, the court can find nothing in the statutory and regulatory scheme that mandates a special form of transportation to a student only in need of remedial math as his special education IEP. These regulations are drawn directly from the federal law on special education. 34 C.F.R. Ch. III, Part 300.16(b)14.
The current federal authority for special education is the Individuals with Disabilities Act (IDEA). The primary purpose of the federal special education procedure established by IDEA is to assure that all children with disabilities receive a free appropriate public education which emphasizes special education and related services designed to meet their uniqueness and to assure that the rights of children with disabilities and their parents or guardians are protected. 20 U.S.C. § 1400 (e);Honig v. Doe, 484 U.S. 305, 309, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). Congress has established a comprehensive statutory framework that is designed to assist states financially in providing disabled children with a free appropriate public education. 20 U.S.C. § 1400 (c).
 Connecticut has enacted a series of statutes that set forth the rights and obligations, both procedural and substantive, of parents, school boards, and other state and local agencies that are involved in the education of disabled children. See Conn. Gen. Stat. §§ 10-76a et. seq. These statutes are intended to comply with the IDEA and ensure appropriate programs for disabled children. They provide that parents who are not satisfied with the education program provided for their child first must raise their concerns at a meeting of the child's Planning and Placement Team ("PPT"). See Conn. Gen. Stat. § 10-76h(a)(1). If the child's parents are not satisfied with the educational program following the PPT meeting, they may request a hearing before the local board of education. See id. If the local board then decides not to modify an identification, evaluation, educational placement, or program, the parents may request an "impartial due process hearing" before a hearing officer appointed by the SDE. See Conn. Gen. Stat § 10-76h (a)(3), (c)(1). Hearing officers have the authority to confirm, modify or reject the prior decision. See Conn. Gen. Stat § 10-76h(d)(1). Parents then have a right to appeal an adverse decision of the hearing officer to state or CT Page 11344 federal court. See 20 U.S.C. § 1415 (e).
 In addition to the procedural safeguards established in 20 U.S.C. § 1415, the Education Division General Administrative Regulations ("EDGAR"), 34 C.F.R. § 76.1-76.902, create an administrative mechanism to ensure that a state complies with the provisions of the IDEA. Specifically, 34 C.F.R. § 76.780 requires a state to adopt a written complaint resolution procedure ("CRP") for receiving and resolving complaints that the state or a local school board is violating the IDEA or its regulations. In Connecticut, the SDE Bureau of Special Education and Pupil Services has established a CRP in compliance with EDGAR.
Mrs. M. v. Bridgeport Education, U.S. District Court (Docket No. 3:98 CV 1894, March 29, 2000, Droney J.) (6 Conn.Ops. 477).
"The purpose of the act, which is the basis of the Connecticut special education scheme, is to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living . . . [and] to ensure that the rights of children with disabilities and parents of such children are protected. . . ." 20 U.S.C. § 1400 (d)(1)(A), (B);United School District No. 1 v. Dept. of Education, 64 Conn. App. 273,286 (2001). "The act confers upon disabled students an enforceable substantive right to public education in participating States." Honig v.Doe, supra, 484 U.S. 310; Unified School District No 1. v. Dept. ofEducation, supra, 64 Conn. App. 286. "The primary vehicle of implementing the act's goals is the individualized education program." Id. 286.
 A stated objective of the act is to provide special education students with a "free and appropriate public education." The act defines a "free appropriate public education" as a special education and related services which (A) have been provided at public expense, under public supervision and direction, and without charge, (B) meet the standards of the State education agency, (C) include an appropriate preschool, elementary, or secondary school education in the State involved, and (D) are provided in conformity with [an] individualized education program." (Emphasis added; internal quotation marks omitted.) School Committee v. Massachusetts Department of Education, 471 U.S. 359, CT Page 11345 367-68, 105 S.CT. 1996, 85 L.Ed.2d 385 (1985). The United States Supreme Court has stated that "[a]lmost as a checklist for adequacy under the Act [a free and appropriate public education] also requires that . . . instruction and services be provided at public expense and under public supervision, meet the State's educational standards, approximate the grade levels used in the State's regular education, and comport with the child's [individualized education program]." (Emphasis added.) Hendrick Hudson District Board of Education v. Rowley, supra, 458 U.S. 189.
United States District No. 1 v. Department of Education, supra,64 Conn. App. 295.
Eytan Nisinzweig, his parents and the other participants in his PPT, surely did not contemplate that when they wrote his IEP furnishing Eytan's special education program, which apparently provides routine non-specialized transportation to that education facility, that the Town of Greenwich was abdicating any responsibility by insurance or otherwise for the negligent operation of a motor vehicle transporting Eytan to school. The plaintiffs have not alleged that he was to be provided any specialized form of transportation. No allegations have been made that the vehicle was in violation of General Statutes § 14-275c and the State Regulations promulgated thereunder. It is assumed, for the purposes of this Motion to Strike, that the transportation provided to the plaintiff to satisfy his IEP was routine and non-specialized without special devices. Regs., Conn. State Agencies § 14-275c-31. Only the failure to provide adequate seat restraints was alleged. The parents had the right to rely on state regulations that required school bus drivers to apply all reasonable measures to safeguard children riding on the bus. Regs., Conn. State Agencies § 14-275c-3. If the public school authorities knew that the negligent operation of Eytan's school transportation would not subject Greenwich to liability, they had an obligation by state regulation to provide adequate insurance coverage. Eytan and his parents, without that coverage, did not have "free public education."
Plaintiffs claim in their Motion to Strike that General Statutes § 46a-58 has been violated by the Board of Education and the members of the PPT that approved Eytans's IEP, if the effect of that IEP was to provide Eytan without insured transportation, whereas all other public school students were provided with insured transportation. "It shall be a discriminatory practice in violation of this section for any person to subject, or cause to be subjected, any other person to the deprivation of any tights, privileges or immunities, secured or protected by the CT Page 11346 constitution or laws of this state or of the United States, on account of religion, national origin, alienage, color, race, sex, blindness, or physical disability." General Statutes § 46a-58 (a). Eytan Nisinzweig appears to meet the statutory definition of "physical disability." General Statutes § 1-11 (b). A violation of General Statutes § 46a-58 (a) is a class A misdemeanor and if property is damaged as a consequence of such violation in an amount in excess of one thousand dollars, such person shall be guilty of a class D felony. General Statutes § 46a-58
(d).
A special education student was alleged to have violated school policy by bringing a gravity knife to school. He was expelled after a board of education hearing. The appeal was sustained on the basis that the essence of the misconduct was caused by the student's disability and as a special education student he could not be expelled without a statutorily required PPT, required by General Statutes § 10-233d(i). Balbi v. RidgefieldPublic Schools, Superior Court, judicial district of Danbury, Docket No. CV 99-0338011S (August 16, 2000, Radcliffe, J.) (6 Conn.Ops. 996) (2000 Ct. Sup. 10204). The IEP is a form of contract made between the local board of education and the parents. Contracts can be enforced against a municipality even though the contract may have some legal deficiencies. Estoppel has been applied against Connecticut municipalities in such cases. Pepe v. New Britain, 203 Conn. 281, 293 (1987). A strong argument for estoppel can be made by the plaintiffs in the event that the defendant's sovereign immunity argument is successful in another venue.Cadlerock Properties Joint Venture LP v. Commissioner of EnvironmentalProtection, 253 Conn. 661, 679-81 (2000). It is possible that the Motion to Strike may be granted on this ground alone.
VI. Interpreting General Statutes § 52-557 to preclude a right of action by special education students against municipalities and their agents violates such student's rights to equal education opportunities under article eighth, § 1 of the constitution of Connecticut and the equal protection laws under article first, §§ 1 and 20 of the constitution of Connecticut, as amended by article twenty-one of the amendments and amendment XIV, § 1 of the United States constitution.
"To implicate the equal protection clauses under the state and federal constitutions . . . it is necessary that the state statute in question, either on its face or in practice, treat persons standing in the same relation to it differently . . ." Ramos v. Vernon, 254 Conn. 799, 826
(2000). The rules applicable to a state and federal equal protection analysis are the same. Id. 827. For the reason stated at the conclusion of this section, this court will not determine the standards to be applied or undertake a full constitutional analysis. Id. 829; State v.CT Page 11347Matos, supra, 240 Conn. 759-64.
The court should not reach a constitutional issue if the matter can be decided on other grounds. "In analyzing the constitutionality of a statute, the court will read the statute narrowly in order to save its constitutionality, rather than broadly in order to destroy it." In reShane P., 58 Conn. App. 244, 254 (2000). "Legislative enactments carry with them a strong presumption of constitutionality and a party challenging the constitutionality of a validly enacted statute bears the weighty burden of proving the statute unconstitutional beyond a reasonable doubt." State v. Angel C., 245 Conn. 93, 102 (1998). "In choosing between two constructions of a statute, one valid and one constitutionally precarious, we will search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent." State v. Ouinet, 253 Conn. 392, 415
(2000).
"We recognize that a party challenging the constitutionality of a statute must prove its unconstitutionality beyond a reasonable doubt . . . While the courts may declare a statute to be unconstitutional, our power to do this should be exercised with caution, and in no doubtful case. . . . Every presumption is to be given in favor of the constitutionality of the statute." (Citations omitted; internal quotations marks omitted.) Blakeslee Arpaia Chapman, Inc. v. ElConstructors, Inc., 239 Conn. 708, 754 (1997). "When a statute is challenged on equal protection grounds, whether under the United States constitution or the Connecticut constitution, the reviewing court must first determine the standard by which the challenged statute's constitutional validity will be determined. If, in distinguishing between classes, the statute either intrudes on the exercise of a fundamental right or burdens a suspect class of persons, the court will apply a strict scrutiny standard wherein the state must demonstrate that the challenged statute is necessary to the achievement of a compelling state interest . . . If the statute does not touch upon either a fundamental right or a suspect class, its classification need only be rationally related to some legitimate government purpose in order to withstand an equal protection challenge." (Citations omitted; internal quotations marks omitted.) Id. 756-57.
"The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution is essentially a direction that all persons similarly situated should be treated alike . . . A violation of equal protection by selective [treatment] arises if: (1) the person, compared with others similarly situated, was selectively treated; and (2) . . . such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional CT Page 11348 rights, or malicious or bad faith intent to injure a person." (Citations omitted.) Cadlerock Properties Joint Venture, L.P. v. Commissioner ofEnvironmental Protection, 253 Conn. 661, 670-71 (2000).
Both prongs of this argument may have been met. In re Daniel H.,237 Conn. 364, 378 n. 11 (1996). The plaintiffs seek the benefit of the statutory waiver of sovereign immunity offered to all school children under General Statutes § 52-557. They are being denied that right by the special defenses of the Town of Greenwich and its Board of Education on the basis that Eytan is autistic and requires special education. He is not being provided a "free public" education in violation of article eighth, § 1 of the Connecticut constitution. He is being denied equal protection and is being discriminated against in violation of article first, § 20, amendment XXI of the Connecticut constitution. "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry national origin, sex or physical or mental disability."
"We must avoid a construction that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve." Willoughby v. New Haven, 254 Conn. 404, 440 (2000) (Dissent). This court cannot consider any conceivable justification from the public view point of treating one student passenger in a regular motor vehicle being transported to public school different than all others. State v. Matos, supra, 240 Conn. 761-62; Keegan v. Aetna Life Casualty Insurance Co., 42 Conn. App. 803, 808, cert. denied.,239 Conn. 942 (1996); Northeast Savings, F.A. v. Hintlian,241 Conn. 269-270, 274 (1997).
This court has a basic judicial duty to avoid deciding a constitutional issue if a nonconstitutional ground exists that will dispose of the case. "The best teaching of this Court's experience admonishes us not to entertain constitutional questions in advance of the strictest necessity." Parker v. Los Angeles, 338 U.S. 327, 333, 70 S.Ct. 161,94 L.Ed. 144 (1949). "Appropriate deference to a coordinate branch of government exercising its essential functions demands that we refrain from deciding constitutional challenges to its enactments until the need to do so is plainly evident." Moore v. McNamara, 201 Conn. 16, 20-21 (1986). "We ordinarily read statutes to avoid, rather than to create, constitutional questions." Castagno v. Wholean, 239 Conn. 336, 344-45
(1996). This court will not reach this constitutional issue since it has stated sufficient reasons to grant the Motion to Strike.
VII. The plaintiff's claim General Statutes § 52-557 unlawfully discriminates and is unenforceable. CT Page 11349
The plaintiff's claim that if the defendants' interpretation of General Statutes § 52-557 precludes the right of action by disabled students as distinguished from non-disabled students, the statute, General Statutes § 52-557, unlawfully discriminates against the disabled students on the basis of their disability in violation of Section 504 of the Rehabilitation Act of 1993 (29 U.S.C. § 794 (a)), the Americans with Disabilities Act (42 U.S.C. § 12101 et seq.) and General Statutes § 46a-58 et seq. This court will not address this discrimination argument.
This court has granted the Motion to Strike the sovereign immunity defenses for a variety of reasons. Even if sovereign immunity did apply the defendants, Town of Greenwich and the Greenwich Board of Education of the Town of Greenwich, along with Kelly Transportation Company may be estopped from raising sovereign immunity as a defense, since they may not have raised and considered this issue when the plaintiff accepted his IEP. This court does not have sufficient facts as to what occurred at the PPT or what is contained within the TEP to consider, at this time, the issues of estoppel or discrimination.
VIII. Article first, § 10, of the constitution of Connecticut bars the use of sovereign immunity under the facts of this case.
"All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." Conn. Const., art. I, § 10. This section is known as the "open court provision." This ensures remedies by due course of law for injury to person, property or reputation and it curtails the power of the legislature to abrogate causes of actions. Gentile v. Altermatt,169 Conn. 267, 286 (1975). This right of access to court goes hand in hand with the plaintiffs' due process rights referred to in the previous section. This court is of the opinion that access to court by the nine regularly educated students injured in that hypothetical school bus collision requires that the tenth student, a special education student, have the equal right to sue free from sovereign immunity defenses. At first blush it appears that the doctrine of sovereign immunity denies access to court and, thus, is in violation of article first, § 10, of the constitution of Connecticut. This court will not reach this constitutional issue since it has stated sufficient other reasons to grant the Motion to Strike.
"Although courts rarely craft remedies of this sort, we note that it is not unprecedented for the judiciary in exceptional circumstances to delineate a procedural scheme for the protection of constitutional rights CT Page 11350 where statutory protections fall short or are nonexistent." Worsham v.Greifenberger, 242 Conn. 432, 444 (1997).
Had this been a suit against a municipality, no doubt the claim of qualified governmental immunity would have been raised, i.e., that the operation of a motor vehicle by a municipal employee is a discretionary act. It has been held by a number of courts that the operation of a motor vehicle is a ministerial function and a municipality cannot be afforded the protection of governmental immunity. "When the government or its agents engage in an activity normally undertaken by private individuals in the course of their everyday lives, a duty arises under the common law to exercise reasonable care in the performance of this task. Governmental employees, like ordinary citizens must operate their vehicles in a reasonably safe manner and avoid creating foresee ably unreasonably risks of harm to the motoring public." McMillen v. Branford, Superior Court, judicial district of New Haven, Docket No. 374004 (March 30, 1998, Blue, J.) (21 Conn. L. Rptr. 561) (1995 Ct. Sup. 3308); Letowt v. Norwalk,41 Conn. Sup. 402, 406 (1989); Borchetta v. Brown, 41 Conn. Sup. 420,424-25 (1990); Agudelo v. Simoneau, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV 95-0146157S (May 29, 1998, D'Andrea, J.) (22 Conn. L. Rptr. 276) (1998 Ct. Sup. 6518). By statute, a municipality is prevented from raising the defense of governmental immunity for negligent transportation of students. General Statutes § 52-557; ToddM. v. Richard L., 44 Conn. Sup. 527, 538 (1995).
 ORDER
For the reasons stated, the Motion to Strike filed by the plaintiffs as to the special defense of the Town of Greenwich and Board of Education of the Town of Greenwich is Granted.
For the reasons stated the Motion to Strike filed by the plaintiffs as to the special defense of Kelly Transportation Company is Granted.
SO ORDERED.
BY THE COURT,
KEVIN TIERNEY, J.